TENNEY VS. THE STATE BANK OF WISCONSIN and others.

*Chattel Mortgage—Earnings of mortgaged vessel while in possession of mortgagor— While in possession of mortgagee—Mortgagee liable to.account—Damages for conversion—Jurisdiction of equity—Waiver of objection.*

1. Where a vessel, mortgaged to secure a debt, remains in the mortgagor's posses_ sion, the mortgagee has no lien upon her earnings, and cannot compel a specific appropriation of them to the payment of the debt.

2. Where A. takes a bill of sale of a vessel from B., and executes to B. an agreement to reconvey on payment of a debt due from the latter—whether it is competent, in an action between the parties for an accounting &c., to show a contemporaneous oral agreement by which the vessel was to be employed, and her earnings applied to the discharge of B's debt, is not here decided.

3. Under such bill of sale and written defeasance (in the absence of any further valid agreement), A. is entitled to the immediate possession of the vessel and her subsequent earnings.

4. While in possession under such agreement, A. is bound to employ the vessel so as to earn as much as can reasonably be earned by her for the benefit of B.; and to account to B. for such earnings on a final settlement.

5. Whether, under such agreement, it is lawful for A. to sell the vessel for the purpose of making the debt, after waiting for a reasonable time, the earnings being insufficient, and B. refusing to pay, is not here decided.

6. If, however, A.'s agreement deprives him of all right to sell, yet, if he sells, that is merely a conversion, and he is merely liable in damages as for a conversion.

7. The rule of damages in such a case is, the value of B.'s interest in the vessel at the time of such sale, with interest.

8. In an action for equitable relief, an objection to the jurisdiction of the court on the ground that the plaintiff has an adequate remedy at law, must be taken by answer, or it is waived; except in cases of such purely legal character that a court of equity cannot afford relief.

9. In this case A. held the vessel under a trust to reconvey it to B. upon fulfilment of the condition named in the defeasance, and the action (in which equitable relief was claimed) was based on an alleged violation of his trust in selling the vessel; and objection to the jurisdiction not having been taken by answer, the court may, without the aid of a jury, give compensation in damages, a specific performance being impossible; or it may make up an issue as to the damages, and send it to a jury.

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon an alleged equitable mortgage of the schooner L. J. Farwell by Isaac T. Branch to *John G. Inbusch*, president of the *State Bank of Wisconsin*, given to secure an indebtedness of said Branch to the bank.   The plaintiff, as assignee of Branch, seeks to have an account taken of such indebtedness, and of the earnings, costs and expenses of the vessel, and that after deducting the amount of said indebtedness from the net earnings of the vessel, *Inbusch* be adjudged to pay the balance to the plaintiff and convey the vessel to him ; or that he be adjudged to pay her value and said balance ; or that upon payment by plaintiff of the amount, if any, found to be still due from Branch to the bank, he be allowed to redeem said vessel, and the same be conveyed to him.   The case made in the complaint is in substance as follows :

On and before the 8th of September, 1857, said Branch was sole owner of said schooner and her equipment, which was enrolled and licensed for and engaged in the coasting trade on the lakes, and was of the value of $16,000, but subject to a mortgage lien for about $9,500.   On the same day Branch was indebted to the *State Bank*, mostly on three notes, in the sum of $6,200 ; and at the request of said *Inbusch*, to secure said indebtedness, entered into an agreement whereby he was to turn over to said *Inbusch* for the bank about $940 worth of wheat and flour, and deliver to him as collateral security a note against one Eastman for about $1,100, and as further security he was to convey said schooner and deliver possession of her to *Inbusch*, who was to hold the title and possession as such security, until said debt, with interest at twelve per cent., should be paid ; and *Inbusch* was to employ the vessel in her business of commerce and navigation, and receive her net freights and earnings, and apply the same on said indebtedness ; and upon full payment thereof he was to reconvey the vessel &c. to Branch.   In pursuance of this agreement, the flour and Eastman's note were turned over to *Inbusch*, and a bill of sale of

said schooner executed and delivered to him; and contemporaneously therewith, *Inbusch* executed and delivered to Branch a defeasance in the following form: "I do hereby stipulate and agree to reconvey to Isaac T. Branch, of Milwaukee, the schooner L. J. Farwell (if the same shall be in existence), on receiving the sum of sixty-two hundred dollars, with interest thereon at twelve per cent. per annum from this date, until paid, together with costs and expenses." Thereupon *Inbusch* immediately took control of the vessel and employed her in navigation. Subsequently said wheat and flour were sold, and said Eastman's note collected, by the bank, and the proceeds applied upon Branch's indebtedness, which on the 1st of March, 1858, was reduced to about $4,500, with interest. The net earnings of said schooner during the year 1857, after said 8th of September, and during each subsequent year, to 1861, inclusive, are stated, the aggregate being $25,750, leaving a balance of about $18,000 due Branch at the end of the year 1861; and said schooner is still in existence, and worth about $12,000. On the 8th of April, 1862, Branch sold and assigned to the plaintiff "his right and interest in and to said agreements, vessel and her earnings, and his claim and demand against the defendants, and each of them, therefor;" and the plaintiff thereupon notified the defendants of said assignment, and demanded of them an accounting and a reconveyance of the vessel, which they refused. The plaintiff therefore demands the judgment above stated.

The answer denies that said schooner was, on the 8th of September, 1857, of greater value than $4,000; admits that she was then subject to a mortgage lien for $9,500, but avers that the defendants were not aware until the commencement of the action that she was encumbered by said mortgage more than $4,500; denies that there was any oral agreement between the defendants, or either of them, and Branch, other than that expressed in the bill of sale and defeasance set out in the complaint; denies that either of the defendants ever took posses-

sion or control of said schooner, or was to or did employ her in business or receive her net earnings to be applied in payment of Branch's indebtedness to the bank; avers that Branch remained in possession and control of the vessel after the making of said bill of sale, the same as before, and received her freights and earnings; that soon after, defendant *Inbusch*, to prevent the vessel from being libelled and sold in admiralty, was obliged to pay certain claims, amounting to over $500; that on the 2d of February, 1858, said vessel was not worth more than $4,000; that on that day one Jones, the owner of said mortgage thereon, informed the defendants that he was about to foreclose the same, unless *Inbusch* would convey the vessel to him, proposing in that case to pay defendants the amount which it would cost to get title by foreclosure; that Branch consented to such conveyance; that defendants, knowing that the vessel was not worth the amount due on said mortgage, accepted the offer, and executed a bill of sale of the vessel to Jones, and in consideration thereof received from him $149.25, which was thereupon credited to Branch on his account. It is further alleged that Branch still owes the bank on said indebtedness $7,374; that about 12th March, 1860, being totally insolvent and unable to pay his indebtedness, he applied to the defendants to remit four-fifths of the same on his agreeing to pay the remaining one-fifth in installments, at eighteen months and two and three years, respectively, from that time; that thereupon an accounting was had between Branch and the bank, and the former was found indebted to the latter in the sum of $5,945, and the bank executed to Branch, at his request, "an agreement in the nature of a composition deed," whereby it agreed to take of him, and he agreed to pay, twenty per cent. of the last named sum in installments as above stated; but that he has never in fact paid any part of said twenty per cent. The defendants therefore insist that neither of them is liable to account or to reconvey said schooner, as prayed in the complaint.

The defendant *John G. Inbusch* having deceased during the pendancy of the action, his administrators were made defendants.

On the trial, Mr. Hibbard, a commission merchant, as a witness for the plaintiff, and against the objection of the defendants, testified that at Branch's request he went with him to the *State Bank.* " Mr. Branch proposed to turn over to the bank, or to *Mr. Inbusch* for the bank, what wheat he had in store, and about two hundred barrels of flour, and give him a mortgage on the schooner L. J. Farwell for the security of his debt. * * *Mr. Inbusch* consented to this arrangement, stipulating that Branch should give him a bill of sale of the vessel in place of a mortgage, and that when Mr. Branch had paid him the debt he would reconvey the vessel to him, and that he [Branch] could have the management of the vessel the same as though he had given him a mortgage ; that he would assist him from time to time with money to enable him to get out of his debts. * * " *Question :* " Who was to have the earnings of the Farwell until she was reconveyed ?" *Answer :* " I think I answered the question when I said that Branch was to have the control of the vessel under the bill of sale. I don't know *that* anything more was said." " *Mr. Inbusch* cautioned Mr. Branch that he must not run the vessel in debt. * * Branch had told him that there was a mortgage already on the vessel, to Jones ; and *Inbusch* said he did not want a second mortgage. He told us distinctly that Branch could manage the vessel the same as though he had given him a mortgage instead of a bill of sale—Branch being opposed to giving him a bill of sale, because he wanted the vessel to furnish him business. * * My understanding of the arrangement was, that when Branch should have paid the *State Bank* what he owed it, by the sale of his wheat and flour, and the earnings of the vessel, *Inbusch* would reconvey her to Branch."

The evidence on the other questions of fact at issue between the parties was very voluminous, and will not be stated here.

The plaintiff's evidence tended to prove, among other things, that the vessel, at the time of the sale by *Inbusch* to Jones, was worth about $12,000; and that said sale was made without the knowledge or consent of Branch. It also tended to sustain the allegations of the complaint as to the value of her subsequent earnings. The defendant's evidence tended to show that the value of the vessel at the time of the sale to Jones, was about $7000 or $8000; and that neither *Inbusch* or the bank was ever in actual possession and control of the vessel; that the same remained under the control of Branch until taken possession of by Jones, after the sale to him by *Inbusch*; but that *Inbusch* procured the vessel to be enrolled, as owner thereof, and gave the bond required by the act of Congress, preparatory to her being employed in navigation in 1858. There was also evidence *that* several hundred dollars of the net earnings of the vessel, during the latter part of 1857, subsequently to the execution of the bill of sale to *Inbusch*, were applied by Branch to the part payment of a prior mortgage upon the vessel.

The circuit court found that the complaint was unproved in its entire scope and meaning, and rendered judgment of dismissal, from which the plaintiff appealed.

*Emmons & Van Dyke*, for the appellant, stated that the court below announced orally, as the reason for dismissing the complaint, that plaintiff's remedy was at law and not in equity; and they argued that the dismissal was erroneous. (1.) When a party has a remedy at law, but proceeds in equity, it is error to dismiss his bill absolutely. *Hawkins v. Lowry*, 6 J. J. Marsh., 55. (2.) The defendants could not at the hearing insist that the plaintiff had an adequate remedy at law, not having taken the objection by answer. *Leroy v. Platt*, 4 Paige, 77; *Bradley v. Root*, 5 id., 632; *Att'y Gen'l v. Purmort*, id., 620; *Wolcott v. Sullivan*, 6 id., 117; *Gable v. Miller*, 10 id., 627; *Cable v. Martin*, 1 How. (Miss.), 558; *Clark v. Flint*, 22 Pick., 231; *Stockton v. Williams*, Walker Ch., 120. 2. We may show by parol the contemporaneous agreement that the vessel was to be em-

ployed in her business of commerce and navigation, and that her earnings were to be applied to the discharge of the debt due the *State Bank*. *Racine County Bank v. Keep*, 13 Wis., 209; *Miller v. Fichthorn*, 31 Pa. St., 252; *Reitenbaugh v. Ludwick*, id., 131; *Mobile Marine Dock Co. v. McMillan*, 31 Ala., 711; *Wentworth v. Buhler*, 3 E. D. Smith, 305. 3. From the bill of sale, defeasance, and character of the property, independent of any agreement, there was an implied obligation in law to employ the mortgaged property at a profit. Edwards on Bailments, 241; Story on Bailments, 343. Equity looks upon that as done, which ought to have been done. 1 Story's Eq. Jur., § 64; Sedgw. on Dam. (ed. of 1858), 507 (481). See also *Bank ads. Hatton*, 1 Nott & McC., 221. 4. The plaintiff is entitled to the equitable relief prayed for in his complaint, and to the remedies of a court of equity. *Hall & Rawson v. Delaplaine*, 5 Wis., 206, 217; *Orton v. Knab*, 3 id., 576. Where a court of equity has jurisdiction to decree a specific performance of a contract in part, it will award damages for the breach of so much as cannot be specifically performed, and not turn the party to his remedy at law. *Chinn v. Heale*, 1 Munf., 63; *McRaven v. Forbes*, 6 How. (Miss.), 569. Since the adoption of the code, there is in this state no court of law distinct from a court of equity. *Hall & Rawson v. Delaplaine, supra*; Van Santvoord's Eq. Pr., sec. III, p. 15. A bill in equity to redeem will not generally lie in behalf of a pledgor or his representatives, as his remedy, upon a tender, is at law. But if any special ground is shown, as if an account or discovery is wanted, or there has been an assignment of the pledge, a bill will lie. 2 Story's Eq. Jur., § 1032; Story on Bailments, § 350, and cases in note 4; *Upham v. Brooks*, 2 Story's C. C. R., 623. 5. In cases of trusts in relation to particular chattels, a bill in equity will lie to enforce the trusts and compel a transfer of the property. 2 Story's Eq. Jur., §724; *Clark v. Flint*, 22 Pick., 231; *Wilkins v. Sears*, 4 Mon., 344; *Field v. Beebee*, 3 Bibb, 19; *Reed v. Lansdale*, Hardin, 6; *Shannon v. Spears*, 2 Marsh., 311;

*Geisse v. Beale*, 3 Wis., 367; *Barr v. Lapsley*, 1 Wheat., 151; *Mechanics' Bank of Alexandria v. Seton*, 1 Peters, 305. The bank was in this case the equitable mortgagee; *Inbusch* the actual mortgagee, with legal title, and the possession or *right of immediate possession*, which right Branch himself could not controvert by parol (*Case v. Winship*, 4 Blackf., 425; 2 Kent, 3d. ed., 515 et seq.; *Pickard v. Low*, 3 Shep., 48; *Colman v. Packard*, 15 Mass., 39; *Whisler v. Roberts*, 19 Ill., 274); *Inbusch* was the agent and trustee of the bank; and the bank and *Inbusch*, in equity, are trustees of Branch's interest in the property. Story's Eq. Jur., §1261 et seq.; 2 Maddock's Ch., 125. 6. The plaintiff is entitled to bring his bill to redeem and for a reconveyance. 2 Story's Eq. Jur., §§ 1021, 1031–2; *Kemp v. Westbrook*, 1 Vesey Sr., 278; *Hart v. Ten Eyck*, 2 Johns. Ch., 100, 101; *Harrison v. Hart*, 1 Comyn's R., 392; Story on Bailm., § 287, and cases cited in note 2. 7. The plaintiff is entitled to the earnings of the vessel since the wrongful sale thereof, and to the account and discovery sought. *Clark v. Flint*, 22 Pick., 231; *Bennett v. Butterworth*, 12 How., (U. S.), 367, 369; *Wilkins v. Sears*, *Shannon v. Spears* and *Reese v. Lansdale, supra*; *Gordon v. Lewis*, 2 Sumner, 143. If the defendants had employed the vessel themselves, we should clearly have been entitled to a discovery and account of her earnings; if they had sold and assigned their mortgage interest, the assignee could have held the vessel only till her earnings were sufficient to pay the bank debt, and would have been liable to the plaintiff. By what principle of equity can it be contended that by their own tortious act in conveying the entire vessel to a third party without notice of our equities, they are relieved from accounting to us for her earnings, and from making a reconveyance? If this be so, the plaintiff is in a worse condition than if the defendants had, without his consent, assigned their interest to an *insolvent* assignee—in which case they would have been held liable as trustees. 2 Lead. Cas. in Eq., Part 2, pp. 431–2. 8. Independent of the earnings, Branch (and the plaintiff as his

assignee) was entitled to an account of the amount due the bank, and to a discovery and account of the costs and expenses provided for in the defeasance, and of the disbursements made on account of the vessel; and to a redemption and reconveyance of the vessel, and the surrender and cancellation of the notes held by the bank. And whether the remedy is sought in equity or at law, upon a wrongful sale of the mortgaged property, *no tender is necessary*, but the debt will be set off against the damages recovered. *Upham v. Brooks*, 2 Story's C. C. R., 623; Edwards on Bailm., 248–9; *McLean v. Walker*, 10 Johns., 472; Story on Bailm., § 349; *Stearns v. Marsh*, 4 Denio, 227.

*Brown & Pratt* (with whom was *John W. Cary*, of counsel), for respondents, made the following among other points: 1. The proof shows either that *Inbusch* rightfully sold and assigned his interest in the vessel, or that he tortiously sold and converted the vessel. If the last was the case, then at the time of the sale the tort was complete, and the liability of *Inbusch* was for damages for the tort, and nothing else. If the former was the fact, he was not held liable to any one; if the latter, the tort was not assignable, so as to give a right of action to the assignee. R. S., ch. 122, sec. 12. 2. Equity does not grant specific performance of a contract for the sale of chattels or personal property, except when it appears from allegations and proof that money will not compensate, as in the case of a family picture. Story's Eq. Jur., 717 et seq.; *Buxton v. Lister*, 3 Atk., 384. 3. Courts of chancery sometimes, when the title to *part* of the property fails, will compensate as to such part; but never, under name of jurisdiction to decree specific performance, will they entertain a bill merely for damages. Such cases must be tried by a jury. Story's Eq. Jur., § 794; *Corporation of Ludlow v. Greenhough*, 1 Bligh, N. S., 794.

DIXON, C. J. In this case we hold:

1. Assuming the correctness of the proposition urged by the

plaintiff's counsel, that it is competent to show by parol a contemporaneous agreement by which the vessel was to be employed in her business of commerce and navigation, and her earnings applied to the discharge of the debt due to the bank (a point which we do not decide), that the parol evidence establishes no such agreement. On the contrary, our conclusion is, that Branch was to retain the control of the vessel and receive her earnings, and that there was no agreement by which he was bound to apply the earnings specifically to the payment of the debt due the bank. This is obvious from a perusal of the deposition of the chief witness Hibbard. When it was agreed that Branch should continue to manage and control the vessel, the same as though he had given a mortgage, we understand reference to have been made to a chattel mortgage of the kind in common use among us, which provides that, until forfeiture or condition broken, the mortgagor shall retain possession of the property mortgaged. The language of the parties is susceptible of no other reasonable construction. It is true, the witness says that Branch relied upon the earnings as a means of discharging the debt; but this was mentioned as a reason why he preferred a mortgage to a bill of sale; but he did not agree to make such specific appropriation.

Neither *Inbusch* nor the bank had any claim to or interest in the earnings, as such, so long as the vessel remained in the possession of Branch; and they could not have compelled such application of them. Branch could have appropriated them as he saw fit, and they could not have followed the funds into the hands of a third person receiving them with notice of the agreement. They relied upon the interest which Branch had in relieving the vessel from the incumbrance, for the application of the money to the payment of their debt. If a teamster mortgages his team to secure a debt, and stipulates that he is to retain possession, giving as a reason that he wants the team to earn money to pay the debt, no one will contend that the mortgagee is entitled to

a specific application of the earnings.   If the teamster neglects to make the application, or to pay the debt, the remedy of the mortgagee is by a seizure and sale of the team, upon which alone he has a lien.   It seems to us, under the parol evidence, that the two cases are precisely analogous.   This view of the agreement is corroborated by the subsequent conduct of the parties.   Branch retained possession of the vessel, and received and appropriated as he saw fit the proceeds of the voyage made in the fall of 1857, without, so far as we are informed, the slightest objection on the part of *Mr. Inbusch* or the bank.

2.   We hold that there is nothing in the language of the defeasance, or in the other evidence presented, showing an agreement for such specific appropriation of the earnings.   Taken in connection with the parol evidence, which the plaintiff's counsel insist must be admitted, we hold, as already said, quite the contrary.   It is undoubtedly true that, by the writings alone, *Inbusch* was entitled to the immediate possession of the vessel, and consequently of her earnings. It may also be true that, had he, disregarding the parol agreement, taken and held the possession of the vessel, it would have been his duty to have employed her so as to have earned as much as reasonably could have been for the benefit of the mortgagor ; in which case he must have accounted to the mortgagor for the earnings upon any final settlement. But this would have been the result not of any express agreement that the earnings were to be so appropriated, but of the application of a familiar principle of law growing out of the relations of the parties.   If, then, we reject the parol evidence, and give effect to the written contract alone, the bill of sale and defeasance being taken as one instrument, and construe it as the plaintiff's counsel claim, and most favorably for the mortgagor, it amounts to no more than a covenant on the part of *Inbusch* not to sell the vessel in satisfaction of his debt and of the previous liens. In the case of an ordinary mortgage, the mortgagee has the right to sell, but *Inbusch* deprived himself of this right by his

agreement to reconvey the vessel when the debt was paid. I am not clear that such is the true construction of the contract, nor that *Inbusch*, after waiting a reasonable time, the earnings proving insufficient and Branch refusing to pay, would not have been authorized to sell. But supposing that he had no such authority, or, having it, that he sold without allowing Branch a reasonable time in which to redeem, the result is that he broke his covenant, and the question is, what should be the rule of damages? If, on the other hand, we give effect also to the parol agreement, then he violated his promise by taking the vessel from the possession of Branch and selling it, and the like question of damages arises.

It seems to us that the rule of damages is the same in either case; and this brings us to the third point.

3. We hold that the rule of damages is, the value of the vessel at the time of the sale; and that the measure of the plaintiff's recovery must be the value, after deducting the sums then due to the bank and upon prior liens, with interest from the date of the sale. In no view which we have been able to take of the case, can we say that the plaintiff is entitled to an account for the earnings of the vessel after the sale. The sale, under the circumstances, was equivalent to a conversion of the vessel; and in cases of the conversion of personal property, the value of the property at the time of conversion, with interest by way of damages to the the time of recovery, has always been considered a just and adequate compensation. If *Inbusch* had taken the vessel without any legal right, and converted it, with no circumstances tending to show malice, or if he had destoyed it by an act of negligence, the rule of damages would have been, the value and interest. We can perceive no reason for applying a different rule now.

4. We hold that it is now too late to object to the jurisdiction of the court. The defendants, by answering and proceeding to a trial upon the merits, waived it. It is well settled that the objection that the plaintiff has an adequate remedy at law

must be taken, in the first instance, by answer. The defendant, by not taking the objection by answer, waives it in all cases except those of such purely legal character as that a court of equity, from its peculiar organization, cannot afford relief: such for instance as slander, assault and battery, and other actions for tort sounding purely in damages, or cases involving dry legal titles to land, or debt on a written instrument. *McDonald v. Crockett*, 2 McCord's Eq., 130 ; *Cable v. Martin*, 1 How. (Miss.), 558 ; *Underhill v. Van Cortland*, 2 Johns. Ch., 369 ; *Ludlow v. Simond*, 2 Caines' Cas., 1. In this case, although the plaintiff has an adequate remedy at law, yet we think there is not a total want of jurisdiction in equity. The relation of mortgagor and mortgagee, and that of vendor and vendee under an executory agreement to convey property, is one of trust ; and this is one of the peculiar heads of the jurisdiction of equity. *Inbusch* held the vessel under a trust to reconvey it to Branch upon the conditions named in the defeasance, and the cause of action grows out of the violation of such trust. Courts of equity will sometimes enforce specific performance of agreements relating to personal property ; and if the defendant does not object at the proper time, we see no reason why the court may not, in a case like this, give compensation in damages where the perfomance becomes impossible, as is done in like actions instituted to compel the performance of contracts relating to real property. At all events, cases where the courts have dismissed bills for want of jurisdiction, no objection having been taken, are very scarce.

As suggested by counsel, the court can, no doubt, make an issue and send the cause to a jury to determine the amount of damages, and this would seem to obviate all objection to the jurisdiction.

This opinion proceeds, of course, upon the supposition that Mr. Branch knew nothing of, and did not assent to, the sale by *Inbusch*. We find no evidence in the case authorzing us to conclude that he did know of or has assented to the sale.

Mil. & St. P. R. R. Co. vs. The Mil. & Minn. R. R. Co. et al.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.

DOWNER, J., having been of counsel for the respondent, took no part in the decision of this cause.