## INGRAM vs. RANKIN and others.

FRAUD AS TO CREDITORS. *(1) When debtor's lease of land not fraudulent.*
MEASURE OF DAMAGES: *(2–5) For conversion or nondelivery of goods.*

1. Where farm crops seized on execution were claimed by the debtor's lessee of the land, under a lease for a term which would expire before any right to the land could be acquired under the judgment: *Held*, that the only question of fraud that could arise was, whether the lease was merely colorable, with an understanding between the parties thereto that the crops should enure to the lessor's benefit.

2. In actions for the tortious taking or conversion of goods, or for breach of contract to deliver goods, unless plaintiff has been deprived of some special use of the property, anticipated by the wrongdoer, or is entitled to exemplary damages, the general measure of damages is the value of the chattels at the time and place of the wrongful taking or conversion, or at which delivery was due, with interest to the time of trial.

3. In case of a wrongful taking or conversion, if defendant has sold the goods, plaintiff may, at his election, recover the amount for which they were sold, with interest from the sale to the trial.

4. If the chattels wrongfully taken or converted are still in defendant's possession at the time of trial, plaintiff may, at his election, recover their present value at the place of the taking or conversion, and in the form in which they were when taken or converted.

5. These rules do not apply to cases in which damages are regulated by special statutes.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover the value of a quantity of hay, wheat and oats, which the plaintiff claims to own, and which, he alleges,

was wrongfully taken from his possession by the defendants and converted to their use. Defendants took the hay and grain by virtue of an execution upon a judgment in their favor against one Hammond, the owner in fee of the land upon which the same was raised and found. Plaintiff had a lease of the land from Hammond for six months from its date, March 6, 1875; and the chattels were seized during that term.

Defendants appealed from a judgment in favor of the plaintiff. The errors which they alleged in the instructions, are stated in the opinion.

For the appellants, there was a brief by *Coleman & Spence*, their attorneys, and *C. A. Eldredge*, of counsel, and oral argument by *Mr. Spence*.

*Edward S. Bragg*, for the respondent.

TAYLOR, J. The appellants assign as errors, that the circuit judge erroneously instructed the jury as to the measure of damages the plaintiff was entitled to recover, and erred in instructing the jury, in substance, that the written lease under which the plaintiff asserted his right to the possession of the land upon which the grain and hay in controversy were raised, was valid and not impeachable for fraud.

It is insisted by the learned counsel for the respondent, that the leasing of real estate by a judgment debtor could not be in fraud of his creditor, as it in no way interferes with the judgment creditor's right to seize and sell such real estate upon his judgment; and especially in this case it could not be in fraud of any such creditor, because the lease did not continue but for one year, as it would have been impossible for the creditor to have obtained any right of possession to the real estate, by virtue of his judgment, within the year. We are inclined to hold that the circuit judge was right in his view of this question, as explained by him to the jury, and that the instruction which was given to the jury upon that question was sufficiently favorable to the defendants. The instruc-

tion was as follows: "But, if the possession of the plaintiff was in reality the possession of Hammond — *i. e.*, if there was an arrangement or understanding between them that the plaintiff should occupy for the benefit of Hammond, that the crop should be raised on the land for his use and benefit, or that whatever the plaintiff might do on the land should be for the advantage and benefit and in the interest of Hammond, — then the crop raised was the individual property of Hammond, and was subject to execution against him, and your verdict must be for the defendant."

It is apparent, from this instruction, that the court fairly submitted to the jury the question whether the lease was merely colorable, and intended as a mere cover, to be used for the purpose of securing to the lessor, the judgment debtor, the benefit of the crops raised on the leased premises, in fraud of his creditors; and this, certainly, was the only question in issue between the parties, which could be litigated in the action. If there was no understanding, either expressed or implied, between the lessor and the lessee, that the crops raised on the leased premises should enure to the benefit and advantage of the lessor, there could be no question of fraud in the case; and it was true, in the sense in which the learned circuit judge understood the case, that the lease itself could not be impeached for fraud.

Upon the question of damages, the court instructed the jury as follows: "Testimony has been given in respect to the value of this property; not the value of the property at the time it was taken, but the highest value of this property at any time since the property was taken, to the present time. *If the plaintiff be entitled to recover, he is entitled to recover the highest value of the property within that period of time, from the time it was taken to the present time.*" To this instruction the defendants duly excepted.

After a careful consideration of the decisions of this court upon the question as to the rule of damages in actions of this

Ingram vs. Rankin and others.

kind, and an examination of a large number of cases decided by the courts of other states in this country, and by the courts of England, we are satisfied that the rule as laid down by the learned circuit judge is not sustained by the weight of authority, and that it ought not to be adopted by this court upon principle. We think the rule adopted by the circuit court would in many cases work great injustice, and violate the rule that compensation for the plaintiff's loss is the true rule of damages in all cases in which he is not entitled to exemplary damages.

As it is urged by the learned counsel for the respondent that the circuit judge was constrained to give this instruction as to the measure of damages, upon the authority of the decisions of this court, it is but just that a full examination of the cases in this court should be had. As this court is now constituted, we would hesitate to set aside a rule of law which can fairly be said to have received the deliberate sanction of the court, in a case or series of cases calling for the settlement of such rule of law.

The first rule laid down by this court as to the measure of damages, and which is sustained by a large number of cases, is that the damages for which the plaintiff may recover must be the legal, natural and proximate consequences of the act complained of; and this rule is equally applied to actions for the breach of contract and for torts. *Vedder v. Hildreth*, 2 Wis., 427; *Brayton v. Chase*, 3 Wis., 456; *Bradley v. Denton*, id., 557; *Gordon v. Brewster*, 7 Wis., 355; *Oleson v. Brown*, 41 Wis., 413; *Stewart v. City of Ripon*, 38 Wis., 584. This rule is so well settled, both in this and all other courts, that it is unnecessary to cite other cases to sustain the same. This rule is only qualified, in this court, where the act complained of is of such a nature as to entitle the plaintiff to recover exemplary or punitory damages, in addition to compensatory damages.

It is unnecessary to cite cases either in this or other courts

to sustain the universal rule of law, that the plaintiff is entitled to recover only compensatory damages, except in the cases above stated, when, under the decisions of this and some other very respectable courts, the plaintiff may recover exemplary or punitory damages.

The great controversy in the decisions and in the courts is as to what are and what are not compensatory damages, all the courts holding to the rule that compensation is the true measure of the damages to be recovered, except where exemplary damages are allowed; and, although there may have been some slight deviation and some *dicta* suggesting a different rule, the uniform current of opinion in this court has been, that in actions for the tortious conversion of chattels, or for a breach of contract by the nondelivery thereof, in the absence of any proof of circumstances showing that the plaintiff has suffered other specific and particular damages which were the natural and proximate result of the tort or breach of contract, the measure of damages is the value of the property at the time of the conversion, or at the time when the same was to be delivered, with interest thereon from such date to the day of trial. In this court, the rule above stated has been approved in the following cases:

*Ainsworth v. Bowen*, 9 Wis., 348, was an action for the conversion of a school land certificate, and the court say, Justice COLE delivering the opinion: "The measure of damages would be the value of the certificate at the time of such conversion." *Nudd v. Wells*, 11 Wis., 407, was an action against a carrier for the nondelivery of goods according to his contract. Justice PAINE, delivering the opinion of the court, says: "The general rule as to damages for nondelivery of goods by a common carrier is the value of the goods, with interest from the day when they should have been delivered;" citing Sedgwick on Damages as his authority for the rule. *Meshke v. Van Doren*, 16 Wis., 319. In this action an attachment had been issued by the plaintiff, and a quantity of wheat belonging

to the defendant had been seized thereon. The attachment had been dissolved upon a trial upon the traverse of the affidavit; and the question was, what damages the defendant should recover against the plaintiff for the taking and detention of the wheat upon the attachment. Justice COLE, delivering the opinion, says:

"The testimony showed that wheat bore about the same market value when seized upon the attachment as when redelivered to the defendant. In the intermediate period it appears that there was a considerable rise in the price for a day or so. The defendant claimed that he should have the benefit of this rise in the value, although he did not show that he could or would have sold at that price. He was, of course, entitled to recover damages for any loss which he had sustained in consequence of being deprived of the use and control of his property during the pendency of the attachment, or for any injury thereto or loss thereof. . . . These damages the jury were directed to allow him under the rule laid down by the court; but to have permitted him to recover the difference between the highest market value of the wheat at any time during the pendency of the attachment, and the value when redelivered to him, without giving any testimony. that he could or would have availed himself of that opportunity to sell, it seems to us would have been erroneous. Such a rule would be giving damages for injuries which the party had never sustained."

*Noonan v. Ilsley*, 17 Wis., 314, was an action to recover the value of $300 of Watertown Railroad stock, which was agreed to be delivered on a certain day; and it was held that the measure of damages was the value of the stock on the day it was to be delivered, and interest thereon to the day of trial. In *Tenney v. State Bank of Wisconsin*, 20 Wis., 152, Chief Justice DIXON, in delivering the opinion of the court, says: "In cases of the conversion of personal property, the value of the property at the time of the conversion, with interest, by

way of damages, to the time of recovery, has always been considered a just and adequate compensation. If Inbush had taken the vessel without any legal right, and converted it with no circumstances tending to show malice, or if he had destroyed it by an act of negligence, the rule of damages would have been the value and interest." *Flick v. Wetherbee*, 20 Wis., 392. *Pickering v. Bardwell*, 21 Wis., 562, was an action against a vendee of a quantity of wheat, which he had purchased and agreed to take at a fixed time. The vendee refused to take the wheat and pay the price agreed upon. The vendor, after tendering the wheat, kept the same some fifteen months, and then sold it for a much less price than the defendant had agreed to pay for the same, and claimed as his damages the difference between the price for which it was sold and the price agreed to be paid therefor by the defendant, and interest. The court say:

" Now the plaintiff kept the wheat in this case some fifteen months after the default of the defendant. It appears that the wheat might have been sold soon after the defendant failed to accept and pay for it; and, in the most favorable view which can be taken of the case for the plaintiff, he ought only to recover the difference between the contract price and the market value of the wheat *at about the time the defendant should have received it*. Perhaps the plaintiff might wait a short time after the expiration of the fifteen days, to see whether the defendant would receive the wheat as he said he would; but certainly he could not wait fifteen months, until the condition of the market was entirely changed, and then sell, and call upon the defendant to make up the deficiency between the contract price and the one realized."

In *Bonesteel v. Orvis*, 22 Wis., 522, which was an action of replevin for a stock of merchandise, the court say: " The proper rule of damages is to ascertain the value of the goods at the time they were taken from the possession of the plaintiffs, that is, their market value — the sum for which they could

be sold at that place,— and to allow plaintiffs this amount, with interest thereon. . . . And in ordinary cases the amount of damages which the owner is entitled to recover for goods wrongfully taken from his possession, is the market price, with interest thereon. As a general rule this is deemed in law a compensation for the loss he has sustained, and this court has laid it down in a number of cases as the proper measure of damages." In *Biglow v. Doolittle*, 36 Wis., 115, the court say: "Were this an action of trover, the rule of damages would be the value of the property when seized, and interest thereon to the time of trial."

The only cases in this court which intimate that a different rule of damages should prevail, are the cases of *Weymouth v. The C. & N. W. Railway Co.*, 17 Wis., 550, and *Webster v. Moe*, 35 Wis., 75. .

In the case of *Weymouth v. Railway Co.*, the only contention was, whether the rule of damages should be the value of the property at the place where the defendant took it, or its value at the place to which it was carried by the defendant, which in that case was much greater than at the place where it was taken. The action was replevin. The court held that the plaintiff's damages, in case a return of the property could not be had, was the value at the place of taking, with interest, and not the increased value which had been added to it by the labor of the defendant. Incidentally, in his opinion, Justice PAINE says: "The value of the property at the moment of conversion, with such increase as it may have received from fluctuations of the market, or other causes independent of the acts of the defendant, should be the measure of damages." That this remark as to the rule of damages was not understood by the court as qualifying the general rule which had been laid down in the cases above referred to, is evident from the subsequent decisions in the cases of *Single v. Schneider*, 24 Wis., 299; *Hungerford v. Redford*, 29 Wis., 345; and *Single v. Schneider*, 30 Wis., 570. In the case in the 24 Wis., 299, it

was said that the rule of damages in the action of replevin was the difference between the whole value of the article when re-plevied, and the addition to its former value made by the de-fendant's labor.    In the case in the 29 Wis., 345, it was held that when the defendant cut the logs in good faith, believing that the land was his, the damages would be the value of the stumpage or standing timber, with interest; and in 30 Wis., 570, it was held that the measure of damages was the value of the stumpage, even when the defendant knew that he was a ·trespasser at the time he cut the logs.

Although the last two cases fix no time at which the value of the stumpage should be estimated, it may be inferred that they were intended to follow the rule laid down in the case of *Weymouth v. Railway Co.* and *Single v. Schneider*, 24 Wis., 299, *supra;* that is, that in a case of replevin, when the chat-tels were in the possession of the defendant at the time the action was commenced, and presumably when the same was tried, the plaintiff may, if he recover and cannot obtain pos-session, recover as his damages the value of the chattels at the time the same were converted, with interest; or, in lieu thereof, the value of the same at the time of the trial, excluding such additional value as shall have been added thereto by the labor of the defendant.

It will be seen by an examination of the language used by Justice PAINE, that he does not give sanction to the rule that the plaintiff may recover as his damages the highest market value at any time intermediate the tortious taking and the day of trial, but that he may recover its value at the time of its conversion, and such increase as it may have received from fluctuations of the market or other causes independent of the acts of the defendant.    The increased value here spoken of is the increased value from such causes at the time of the trial, and not such as it may have had at any intermedi-ate period.    This construction makes all the cases in replevin above cited harmonize, and is not in any way inconsistent

with the other rule, that in actions to recover damages for the conversion of chattels the value at the time of conversion, with interest, is the measure of damages. In cases of the latter kind, it is immaterial whether the property is in existence, or even in the hands of the defendant at the commencement of the action or at the time of the trial. In the case of replevin, ordinarily, the property is in the hands of the defendant when the action is commenced, and is supposed either to be in his hands or in the hands of the plaintiff at the time of the trial. If it be in the hands of the plaintiff, the question of damages as to the value of the property does not arise unless the defendant recovers; and if it be in the hands of the defendant and the plaintiff recovers, as the title has always been in him and is still in him, the defendant ought not to be permitted to retain the same, in case it is then worth more than at the time of the conversion, when such increased value is attributable to other causes than the labor and money spent on the same by the defendant, without paying the plaintiff such increased value; and this is the extent to which these cases go.

The general rule as to the measure of damages established by these cases in the action of replevin, where the property is still *in esse* and in the hands of the party committing the wrong, is the value of the property at the place where the same was taken, at the time of the trial, whether such value be greater or less than it was at the time of the taking, excluding any value added by the labor or money of the wrongdoer; and when such value is less than the value at the time of the taking, for any cause, the party may also recover, as damages, the difference between such values, in addition to any special damages he may have sustained by the loss of the use of the same during such time.

After the last decision in the case of *Single v. Schneider* was made, the legislature, undoubtedly supposing the rule laid down in that case was likely to be a source of injustice towards those who owned pine lands, and had invested their

money in such lands as permanent investments, passed the law of 1873, prescribing a different rule of damages against persons who wrongfully and willfully cut and carry away logs and timber which do not belong to them.

This act, however, carefully follows the rule of damages laid down by this court in actions of tort for the recovery of damages for the conversion of chattels, even in actions for cutting timber, by allowing the defendant to allege that the cutting was done by mistake, and tender the value of logs at the time the same were cut, with interest to the date of such tender and ten per cent. additional, with costs. And such tender becomes a full defense to the action, if the jury find on the trial that the cutting was by mistake, and that the tender was the full value of the logs at the time of the cutting, with the interest and the penalty of ten per cent. The ten per cent. added in this case we consider as very much in the nature of a penalty, although not strictly so.

The case of *Webster v. Moe*, 35 Wis., 75, was tried after the passage of this law, and the decision was based wholly on the fact that, in actions for cutting logs, the legislature had fixed a rule of damages, and although that action was commenced before the act was passed, yet, in deference to the legislature, the court applied the legislative rule to the case. It would therefore be a perversion of the language used in that case to hold that the court intended to establish a general rule contrary to the whole course of decisions in the court from the time of its first organization.

It certainly cannot be said that this court has in any case decided that, either in actions for the nondelivery of chattels according to agreement, or in actions to recover damages for the conversion of the same, the plaintiff may recover as damages the highest market value of the chattels at any time intermediate the time when they should have been delivered according to contract, or the time when they were converted, and the day of trial. On the other hand, we think the

uniform course of decision is, that the measure of damages is the value of the property at the time fixed for the delivery, or at the time of the conversion, with interest to the day of trial; the only exception to the rule being that in case of replevin, where the property is *in esse* and supposed to be in the hands of the defendant at the time of the trial, if plaintiff recovers, he may recover as his damages the value of the property on the day of trial, excluding any value added to the same by labor or money of the defendant or those under whom he claims.

If the question were open for consideration in this court, and we were at liberty now to fix a rule of damages in cases like the one at bar, we should feel constrained to fix the one which has already been established by this court. It is said that the rule giving as damages the highest market value intermediate the conversion or day of delivery and the day of trial, should be applied to articles of trade and commerce which fluctuate in value from day to day; and that to adhere to the rule of value at the time of the conversion would in many cases allow the wrongdoer to make profit out of his own wrong, or at all events it might prevent the plaintiff from taking advantage of a rising market, and thereby might deprive him of his reasonable expectations of profit from his investments.

There can be no force in the argument that the defendant would be allowed to make money out of his own tortious act. If the wrongdoer sells the property which he has unlawfully taken from another, the owner of the property can waive the tort and sue the tortfeasor for the money he has received upon such sale of his property, and thereby prevent him from making a profit out of his wrong. But the rule which allows the plaintiff to recover the highest market value is objectionable, because it allows him to recover speculative damages, especially when a long time elapses between the conversion and the day of trial. In most cases property which rapidly changes in value is not retained in the possession or owner-

ship of one person for a great length of time, and it would be a matter of the utmost doubt whether the plaintiff, had he not been deprived of the possession of his property, would have realized the highest market value to which it might have attained during the time of the conversion and the time of trial; and in those cases where the market value is very fluctuating, great injustice would be done by this rule to the man who honestly converted such property, in the belief that it was his own, if, after the lapse of five or six years, he should be called upon to pay the highest market value it had attained during that time. The hardship of enforcing this rule in the case of stocks, which is perhaps property of the most unfixed value, forced the court of appeals in New York to repudiate the rule, after it had been partially adopted by the courts of that state. See *Baker v. Drake*, 53 N. Y., 211; *Bank v. Bank*, 60 N. Y., 42.

The difficulties and injustice of the rule of the highest market price has led to various modifications of it by the courts which have adopted it; some courts having so modified it as to confine it to the highest price between the date of conversion and the commencement of the action; others to the time of commencement of the action, provided the action be commenced within a reasonable time; and others between the time of conversion and the time of trial, provided the action be commenced within a reasonable time. In California, where the courts had been holding to the rule of the highest market value, in the case of *Page v. Foster*, 39 Cal., 412, when under this rule the plaintiff had recovered the sum of $25,763 for a quantity of hay which, when taken by the defendant, was worth only the sum of $2,500, after an elaborate discussion of the case and reference to a large number of authorities, the court finally settled down upon the rule that the plaintiff might recover the highest market price to which the property might attain *within a reasonable time after the property had been taken, with interest computed from the time such value was estimated to the day of trial.*

Mr. Field, in his work upon the Law of Damages, after an examination of all the cases, says: " The rule of valuation of the property at the time of the conversion, with interest, prevails in Massachusetts, where there is no claim for special damages; and this general rule has been recognized in Pennsylvania, Kentucky, Missouri, West Virginia, New Hampshire, Connecticut, Maine, Vermont, Illinois, Wisconsin, Louisiana, Mississippi, Nevada, Florida, Delaware, Maryland, Minnesota, New York, Texas and Iowa." Field on the Law of Damages, 629, 630, and cases there cited. Sedgwick, in his work on Damages (6th ed.), p. 591, says: " On principle the value at the time of the conversion should control, unless the plaintiff is deprived of some special use of the property anticipated by the wrongdoer." " It appears to me that, upon principle, unless the plaintiff has been deprived of some particular use of his property of which the other party was apprised, and which he may be thus said to have directly prevented, the rights of the parties are fixed at the time of the illegal act, be it refusal to deliver or actual conversion, and the damages should be estimated as at that time."

The rule as above stated by Sedgwick has not only been adopted by the courts of the several states above mentioned, but it is undoubtedly now the rule in the English courts. In the case of *France v. Gaudet et al.*, L. R., 6 Q. B., 199, decided in 1871, it was held that in an action for the conversion of a quantity of champagne the plaintiff was entitled to recover the value at the time of the conversion, with interest, and that the fact that he had made a bargain to sell the same at a specified price to a solvent customer, was evidence of its value, there being no other in the market of the same quality to be procured at that time. Justice MELLOR, who delivered the opinion, says: " We are of the opinon that the true rule is to ascertain the actual value of the goods at the time of the conversion, and that a *bona fide* sale having been made to a solvent customer at 24 shillings per dozen, which would have been

realized had the plaintiff been able to obtain delivery from the defendants, the champagne had, owing to these circumstances, acquired an actual value of 24 shillings per dozen; and we think that, in the present case, that ought to be the measure applied;" and in another place he says: "The conversion consists in withholding from another, property to the possession of which he is immediately entitled, and the circumstances which affix the value are then determined."

The rule fixing the measure of damages in actions for breaches of contract for the delivery of chattels, and in all actions for the wrongful and unlawful taking of chattels, whether such as would formerly have been denominated *trespass de bonis* or trover, at the value of the chattels at the time when delivery ought to have been made, or at the taking or conversion, with interest, is certainly founded upon principle. It harmonizes with the rule which restricts the plaintiff to compensation for his loss, and is as just and equitable as any other general rule which the courts have been able to prescribe, and has greatly the advantage of certainty over all others.

We have concluded, therefore, to adhere to the general rule laid down by this court in the cases cited, and hold that in all actions, either upon contract for the nondelivery of goods, or for the tortious taking or conversion of the same, "unless," in the language of Sedgwick, above quoted, "the plaintiff is deprived of some special use of the property anticipated by the wrongdoer," and in the absence of proof of circumstances which would entitle the plaintiff to recover exemplary or punitory damages, the measure of damages is, *first*, the value of the chattels at the time and place when and where the same should have been delivered, or of the wrongful taking or conversion, with interest on that sum to the date of trial; *second*, if it appears that the defendant, in case of a wrongful taking or conversion, has sold the chattels, the plaintiff may, at his election, recover as his damages the amount for which the same were sold, with interest from the time of the sale to the

day of trial; *third,* if it appears that the chattels wrongfully taken or converted are still in the possession of the defendant at the time of the trial, the plaintiff may, at his election, recover the present value of the same at the place where the same were taken or converted, in the form they were in when so taken or converted.

These rules will prevent the defendant from making profit out of his own wrong, will give the plaintiff the benefit of any advance in the price of the chattels when defendant holds possession of the same at the time of the trial, and on the whole will be much more equitable than the rule given by the court below. It will be understood that we do not intend that these rules shall apply to cases which come under the provisions of chapter 263, Laws of 1873, now section 4269, R. S. 1878, or under the provisions of any other statute which may prescribe the damages which may be recovered in a given case.

The evidence is not sufficiently clear to justify this court in fixing the value of the grain and hay at the time the same were converted by the defendant, and we are unable, therefore, to direct that the verdict may stand for the balance, if the plaintiff shall remit a certain amount of the damages recovered, and that judgment may be entered for such balance; but, as there seems to be no probable defense to the action, it will be an easy matter for the parties to agree upon the damages which the plaintiff will be entitled to recover under the rule established by this opinion, and thereby avoid the necessity and expense of a new trial; and we must leave that matter to the discretion of the parties.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.