Findlay and another, Respondents, vs. Knickerbocker Ice Company, Appellant.

104　　375
114　　18

*October 2 — October 20, 1899.*

*Amendment of pleading: Replevin: Measure of damages: Depreciation in value: Punitory damages: Property not in esse: Verdict: Immaterial errors.*

1. An oral decision allowing an amendment of the complaint is sufficient, and the court's declaration of what the decision was, reduced to writing and signed ten days later *nunc pro tunc*, will not be disregarded on appeal, at least upon the conflicting recollection of counsel.
2. For a tortious taking of personal property amounting to a conversion, the owner, when he cannot obtain his property, may recover in replevin its value *at the time of the taking,* and interest from that time.

3. Where in such a case the owner recovers either the possession of the property or its value as of a later date than the tortious taking, he may recover in addition, as damages, any depreciation in the value of the property which has taken place from any cause pending the detention, even though such depreciation was not due to defendant's fault or neglect.

4. An ice-house, in which plaintiffs had stored ice pursuant to a renting partly oral and partly by letter, was purchased by defendant, who also received a bill of sale, in general terms, of personal property. Plaintiffs were about to remove the ice, but defendant, being in doubt as to whether it had been transferred by the bill of sale or was the property of the vendor of the ice-house, demanded evidence of plaintiffs' title. Plaintiffs refused to furnish such evidence, although they might easily have done so, and defendant thereupon refused to permit them to remove the ice unless they exhibited a lease. No wrong motive, malice, or wantonness in the withholding of the ice being shown, plaintiffs were not entitled, in replevin, to recover punitory damages.

5. In replevin for a quantity of ice it appeared that the ice had dwindled from 1,800 tons at the time of the seizure by defendant to forty tons at the time of the trial, and had become a conglomerate mass not worth the cost of removal. *Held*, that the property in controversy had become practically nonexistent, and that an insufficient description thereof in the verdict and the failure to find the value per ton so as to enable delivery of a part in diminution of the recovery were immaterial errors.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

In the spring of 1898 defendant purchased from the National Ice Company a certain ice-house and also received a bill of sale, in general terms, of personal property, the contents of which is not specifically disclosed, but according to evidence might have sufficed to transfer any ice stored in that ice-house. Plaintiffs, the winter previous, cut and stored in the ice-house, under the authority of a renting partly verbal and partly by letter, a quantity of ice, as to which transaction the defendant had no knowledge. In June, 1898, defendant, learning that the plaintiffs were about to remove the ice, applied to one of them for information as

to their rights and demanded that he exhibit his lease, which plaintiff refused to do with the assertion, according to some of the testimony, that he had a lease at hand but was under no obligation to exhibit it. Defendant thereupon, on June 6, 1898, interrupted plaintiffs in the removal of the ice, put a custodian in charge thereof, and notified plaintiffs that they could not remove the ice unless they exhibited a lease. Plaintiffs made no attempt to convince defendant of their rights, and on June 13th commenced this action in replevin, without affidavit for possession of the property. The action was tried in January following, by which time the ice, originally approximating 1,700 or 1,800 tons, had melted away so that there only remained a pile amounting to about forty tons. The defendant, a few days before the trial, had satisfied itself, from other sources, of plaintiffs' ownership, which it conceded on the trial. Under instructions from the court, the jury by their verdict found the value of the ice, at the time of its seizure by the defendant, June 6th, at $1,275, with nominal damages for detention, and also found exemplary damages in the sum of $2,100.

Prior to the commencement of the January term of court the plaintiffs gave notice of motion to amend their complaint so as to set out grounds for special and consequential damages, and also by inserting allegations and prayer for exemplary damages. This motion was taken up at the opening of the term, on the 9th and 10th of January, and the court announced a decision, orally, denying the amendment with reference to consequential damages and permitting that with reference to exemplary. Some dispute exists as to the terms of that decision. During the trial, objection being made to any evidence or submission upon the question of exemplary damages, the court reduced to writing and signed, on January 19th, an order, as of the 9th, amending the complaint by inserting allegations that the taking was wilful, wanton, and malicious, and raising the *ad damnum* to $5,000.

For the appellant there was a brief by *B. J. Stevens*, attorney, and *W. H. Card*, of counsel, and oral argument by *Mr. Stevens*. To the point that defendant's interference with plaintiffs' property being without malice, wilfulness, or wantonness, there was no basis for exemplary damages, they cited *Patry v. C., St. P., M. & O. R. Co.* 77 Wis. 218, 227; *Grace v. Dempsey*, 75 Wis. 313, 325; *Anderson v. Sloane*, 72 Wis. 582–584; *Barnes v. Martin*, 15 Wis. 240, 245; *Beveridge v. Welch*, 7 Wis. 465, 474; *Hamlin v. Spaulding*, 27 Wis. 360; *Potter v. C. & N. W. R. Co.* 21 Wis. 372; *Goodno v. Oshkosh*, 28 Wis. 300; *Spicer v. C. & N. W. R. Co.* 29 Wis. 580; *Milwaukee & M. R. Co. v. Finney*, 10 Wis. 388; *Robinson v. Superior R. T. R. Co.* 94 Wis. 345.

For the respondents there was a brief by *Morris & Riley* and *H. W. Chynoweth*, and oral argument by *Mr. Chynoweth*.

DODGE, J. 1. The regularity of the amendment of the complaint cannot be doubted. An oral decision amending the complaint, made by the court on the 9th or 10th of January, was entirely sufficient for that purpose (*Baker v. Baker*, 51 Wis. 538); and we cannot disregard the court's declaration of what that decision was, reduced to writing and signed ten days later *nunc pro tunc;* certainly not, upon the conflicting recollection of counsel.

2. Counsel for appellant urges as error the fact that the court submitted to the jury the question of the value of the property at the date of the seizure by defendant, viz. June 6, instead of at the time of commencing suit, June 13, 1898, or at the time of the trial, January 19, 1899. The taking by the defendant was unquestionably tortious, and constituted a conversion, if plaintiffs had chosen so to treat it. That being so, the rule of damages is too well and deliberately settled by this court in *Ingram v. Rankin*, 47 Wis. 406, to require or admit discussion. The plaintiff is entitled to recover, when he cannot obtain his property, its value *at the time of its taking*, and interest therefrom, with damages for

detention, which need not here be mentioned.  Under what circumstances it may be proper to submit the question of the value of the property at the time of the trial, if it be then *in esse* and capable of delivery in substantially its original condition, is a question not here presented; for the property in question was, for all practical purposes, nonexistent at the time of trial.  It is obvious at once that the forty-ton residuum left by the melting away of the original 1,800 tons was no longer ice in merchantable form.  It had, of course, lost its shape and identity as merchandise, and become a conglomerate mass, merely an incumbrance of the space it occupied, not worth the cost of removal.  Delivery of the property claimed, or any part thereof, in substantially its original condition, could not be had.

While, perhaps, sufficiently disposed of for the purposes of this case by the views already expressed, we cannot forbear correction of a construction which appellant's counsel places upon the opinion in *Ingram v. Rankin* to support the rule that upon the plaintiff must fall any depreciation which the property may suffer in defendant's possession, if not due to the latter's neglect or fault.  Such doctrine, though not without some apparent support elsewhere, receives none from the decisions of this court.  On the contrary, the true rule, where the plaintiff recovers either possession or value fixed as of a date later than a tortious taking, is that he shall recover in addition, as damages, any depreciation in the value of the property which has taken place pending the detention from any cause.  *Ingram v. Rankin*, 47 Wis. 415; *Wadleigh v. Buckingham,* 80 Wis. 230, 239; Cobbey, Replevin, § 867; *Carrel v. Early*, 4 Bibb, 270.  That rule is eminently just, in that it relieves the innocent owner from the risks of depreciation or destruction, against which he is prevented from guarding by the wrongful detention by another, and requires such risks to be borne by him who illegally withholds the property.  The peril should rest upon the guilty, rather than the innocent.

The fact already stated, that it conclusively appeared that the property in controversy was not *in esse* at the time of trial, sufficiently disposes of certain .detail criticisms of the verdict, in that the property is not sufficiently described to enable the sheriff to accept delivery, and that the value per ton is not ascertained, so as to enable delivery of a part in diminution of the recovery.  Since no delivery is possible, such defects, if defects they be, are immaterial, and not prejudicial.

3.  Appellant urges that there was no evidence. to support a finding of $1,275 as the value of the ice.  A careful examination of the evidence convinces us, however, that such evidence, not incredible, did exist, although it may well be that the weight of evidence preponderated in favor of a less sum.    The appellant's own witness, Colby, testifies to a depth of the ice of from eleven to thirteen feet, and Aberly and Nummerdor both testify to a thickness exceeding fifteen feet.    A horizontal area of about 5,000 square feet, which would result in one hundred tons of ice to each vertical foot, is established without much conflict; and, while the evidence as to value preponderates in favor of $1 per ton, there is evidence tending to establish .$1.40.    We therefore cannot say that there was not evidence to support the verdict on this question, although other witnesses, with perhaps better opportunity of knowledge, made lower estimates.

4.  Appellant insists that there was no evidence to justify a submission of the question or to support a finding of punitory damages.    The uncontradicted evidence, we think, fully establishes a state of doubt in the minds of the defendant's officers as to the ownership of this ice,— as to whether it was transferred to the defendant by a somewhat general bill of sale, or whether it was property belonging to the former owners from whom defendant had purchased the ice-house, and to whom it might have owed some duty of reasonably careful custody.    In this state of doubt it was certainly justifiable to demand of an entire stranger seeking

Findlay and another vs. Knickerbocker Ice Co.

to remove this ice from their premises some evidence of his right thereto, and the conduct of the plaintiff, upon that request being made, in refusing to furnish any such evidence, although he might easily have done so, well tended to increase their hesitancy in surrendering to him. It also appears, without controversy, that all prohibitions against plaintiff's removal of the ice were accompanied by an offer to accept exhibition of his lease, if such he had. There is absolutely no evidence of any wrong motive, malice, or wantonness in the withholding of this property, under those circumstances, and the jury should not have been allowed to enter that almost limitless field of speculation as to motives, and punishment therefor, involved in the allowance of punitory damages. We think the submission of that question, as also the refusal of the court to set aside the verdict thereon, was error. That error, however, affects no other part of the recovery; and, while the judgment must be reversed therefor, it should be upon the condition that, if plaintiff chooses to remit the exemplary damages, the rest may stand.

*By the Court.*— Judgment reversed, and action remanded for a new trial, with the option to the plaintiff to remit the amount of exemplary damages within thirty days after the record is remitted, in which case judgment is to be entered for the plaintiff for the rest of the recovery awarded by the verdict.