## NUDD *vs.* WELLS et al.

### APPEAL FROM RICHLAND CIRCUIT COURT.

Heard January 24.]            [Decided June 4, 1860.

*Jurisdiction— Jury— Common Carriers —Contract—Damages.*

Where a jury find a verdict for a greater amount than the party is entitled to have under the rules for damages, and they cannot be ascertained, and the proper amount fixed by the court, by the application of those rules; the court cannot fix the amount, and if the party will remit the excess, refuse to grant a new trial. Such a course would be a substitution of the judgment of the court for the verdict of the jury, upon a question which the jury alone could determine.

In a contract for the delivery of goods by a common carrier, it was agreed that the carrier should remit five cents upon every 100 pounds weight, for every day exceeding fourteen, after the receipt of the goods; and in an action upon this contract for non-delivery, the circuit court gave damages in the value of the goods

Nudd vs. Wells et al.

with interest, from the day they should have been delivered, and also five cents on each 100 pounds for each day until the goods reached their destination : Held, that this was error. The provision to deduct five cents was intended to provide for a temporary delay, and not for a complete failure to fulfil the contract.

In an action against a common carrier for non-delivery of goods, the plaintiff cannot recover for damages to the article delivered to be carried.

Where no time is fixed for the delivery of an article received by a common carrier to be transported, the carrier is bound to carry the same in a reasonable time.

Where a party has a right of action for the non-delivery of an article received by a common carrier, he may waive the right by receiving the same, after the time at which it ought to have been received: but this right will not be waived by another party receiving the same from the carrier.

Whether a cause can be removed by petition from a state court to the district court of the United States, argued by counsel.

This action was commenced by Amos Nudd, against Henry Wells and others, the partners of the American Express Company, to recover damages for the non delivery of a box of machinery, delivered to the defendants, in Boston, Mass., to be transported to Milwaukee. The contract of the defendants was contained in the following receipt :

Received of Moulton by the Merchant's Despatch in apparent good order the following packages, being marked as in the margin, to wit : One box machinery to be forwarded in like good order, damages of navigation and from fire excepted, to Milwaukee, only, he or they paying freight for the same at the rate of 190 cents per hundred pounds, or as per classification, annexed, five cents per hundred pounds deduction being allowed for every day's detention over 10 days in forwarding as above, unavoidable delays and Sundays excepted.

This receipt is not binding unless the freight for which it is given is marked Merchant's Despatch. Dated Sept. 26th, 1856.

For the proprietors, H. W. KEYES.

The plaintiff's name and residence, Richland Centre, Richland county, was on the receipt. The box contained, and was itself a model improvement in a fire engine, which the plaintiff had patented in February, 1855, and he desired the the use of the same in order to make sales of his patent right. The complaint averred the non-delivery at Milwaukee or at any other place, and claimed damages for the loss of the use &c., of the patent, $3,600 and costs.

Before the defendants answered they filed their petition and bond, and demanded a trial in the district court of the United States, for Wisconsin, on the ground that they were all non-residents of the state of Wisconsin. This petition was refused by the circuit court; and the defendants then answered, that the box was shipped by the defendants, directed to the plaintiff at "Richland Centre" &c. That their line reached no farther than to Milwaukee, to which place they had carried the box, and there delivered the same as was their custom to some responsible common carrier, for transportation to the consignee, that is, to the Milwaukee and Mississippi R. R. Co., to be delivered at Lone Rock, a station nearest and most convenient to Richland Centre. And that the railroad company had delivered the same to the plaintiff.

On the trial of the cause before a jury the plaintiff was sworn and testified to the delivery of the machine to the defendant, and to the value of it, and the damages he had sustained by reason of the detention, as stated in the complaint; that he had demanded the machine at Milwaukee, in August, 1858; but had not taken it from Lone Rock, though he had seen it there, nor had he paid the freight. Other witnesses were examined as to the value of the machine, and its use as a model. The defendants then proved that the machine was shipped from Chicago to Milwaukee, 24th of May, 1857, and delivered to the Milwaukee and Mississippi railroad company, for transportation to Lone Rock. That such was the custom of the Express company, when their packages went beyond the terminus of their line. The machine reached Lone Rock, May 29, 1858. It was damaged when at Chicago and came so to Lone Rock, by having one of its wheels broken. The machine weighed 1040 pounds.

After the close of the evidence the counsel for the defendants asked the court to instruct the jury: 1st. "There being no allegation in the complaint and no proof given that the machine in question was marked Merchants Despatch as required by the terms of the receipt, that the plaintiff had failed to make out a cause of action against the defendants under the contract in question, which the court refused to give and instructed the jury as follows: "the provision or clause in the said receipt, that the defendants would pay five cents per one hundred pounds for every days detention after ten days, did not fix the measure of damages for the non-delivery of the goods at the time agreed upon, except for a suffi-

cient length of time to absorb the amount agreed upon for carrying the goods, but that the legal construction of said clause was, that in case of failure to deliver within ten days, Sundays and unavoidable accidents excepted, the defendants would reduce the amount of their charges until, by such reduction, the amount to be paid for freight was absorbed, and then the measure of damages would be whatever actual damages the party had sustained by reason of the non-delivery of the machine. If a common carrier refuses to deliver goods received by him for transportation, unless upon payment of a greater sum than the contract price, that upon such refusal the carrier would be liable to pay the full value of the machine. If they found, from the evidence, that the machine in question was damaged by the transportation, except by unavoidable accident, to such an extent as to render it entirely useless for the purpose for which it was intended, that then the plaintiff was entitled to recover the full value of the machine, and also, damages for its detention, and that the damages for the detention were the actual damages sustained. And if there was no other proof in the case from which the jury could estimate the use of the machine or the damages sustained for its non-delivery, that they could take, as a basis, the five cents per hundred pounds for every day's detention after the ten days, as showing what would have been the value to the plaintiff of the machine, during the period of time between which it was received and should have been delivered," and to which ruling and decision of the court the defendants excepted.

The defendants further asked the court to instruct the jury: 2. " That by the terms of the contract, the measure of the damages for non-delivery of the goods, or for not delivering the same at the time agreed, had been fixed, and that the plaintiff in this case could only recover for the non-delivery, according to contract, the five per cent. per one hundred pounds, for every day's detention, together with such an amount as would be required to put the machine in as good order as when delivered."

3. " That where a box of goods is delivered to a common carrier, marked in a particular manner, without any directions except such as may be inferred from the marks themselves, the carrier has a right to presume that the consignor of the goods intends the carrier shall transport and deliver them in the usual and customary way. And if the owner

of the goods neglects to make the necessary inquiries as to the usage or custom of the business, or to give directions as to the disposal of the goods, it is his own fault, and the loss if any, after the carrier has performed his duty according to the ordinary course of his trade and business, should fall upon such owner, and not upon the common carrier."

"4. That if the jury find from the evidence that the terminus of the defendant's route is at Milwaukee, and that beyond Milwaukee they had no line or route of their own, and that the box in question was marked "Amos Nudd, Richland Centre, Richland Co.,Wis.," and that said Richland Centre was at a point or place beyond the terminus of the defendant's line or route, and that the plaintiff had given no special directions in relation to the said box, and that the said defendants had no directions in relation to the said box, except what might be inferred from the marks on the said box, and shall further find from the evidence, that it is the usual and ordinary custom of trade and business, and the usage and custom of the defendants, where goods are thus marked to a point or place beyond the terminus of their own route, to transport and carry goods to the terminus of their own route, and then deliver the same to another responsible company or responsible carrier, not in any way connected or interested with said defendants, to be forwarded to the destination marked. And if the jury further find, that in accordance with such usual and ordinary course of business, and said usage and custom of the defendants, the defendants did transport and carry the said box and fire engine to Milwaukee, and did there, deliver the same to a good and responsible carrier, to be transported to Richland Centre, or to a point on the line of said carrier's route, where goods destined to Richland Centre were usually and ordinarily delivered, that this was in law, a delivery of said box and fire engine, according to the legal import of the receipt given in evidence, except as to the time of the delivery.

" 5. If the jury find from the evidence that it is the usual and ordinary course of trade and business, and the usage and custom of business of the defendants to transport and convey goods, where they are marked to a point of destination beyond the terminus of their own route, to the terminus of their own route, and there deliver the goods so marked to a good and responsible carrier, not in any way interested in, or having any community of interest with the defendants, to be trans-

ported to their place of destination, or to the usual and customary point where goods for such particular destination were ordinarily and usually delivered; and that in pursuance of, and in accordance with said custom and usage, these defendants did transport the goods in question to the terminus of their route, and did deliver the same to a good and responsible carrier, and the goods were by said carrier duly conveyed to Lone Rock, the usual and customary place for said common carrier to deliver goods destined for Richland Center, that this would, in law, constitute a delivery of the goods by the defendants."

" 6.    That if the jury find from the evidence in this case that the goods in question were marked 'Amos Nudd, Richland Centre, Richland county, Wis.,' and that said Richland Centre is a place or point beyond the defendant's line or route, and that goods destined for said Richland Centre are usually and ordinarily conveyed to Lone Rock, on the line of the Milwaukee and Mississippi Railroad, and that from Lone Rock to Richland Centre, there is no established line or route for sending or transporting goods, and that the defendants, in accordance with the well known usage and custom of their business, and of common carriers generally, transported or conveyed the goods in question to Milwaukee, and that said defendants had no special instructions from the plaintiff in relation to said goods, and had no directions except from the marks on said goods, or the directions in the margin of the receipt, as to their destination, and that in accordance with the usual and ordinary course of business, said defendants delivered the said goods at Milwaukee, to the Milwaukee and Mississippi Railroad Company, and that said company was at the time a good and responsible company, and that said company did carry and deliver the goods at Lone Rock, in the usual and customary manner; that this was in law a delivery of the goods in question."

Which instructions the court gave with the qualification attached to each, "provided, the goods were delivered at Milwaukee in apparent good order, and if the machine was damaged before it was delivered at Milwaukee, the defendants were liable to pay that damage ; and if it was so damaged as to absolutely destroy it for the purpose for which it was intended before it reached Milwaukee, that in that case, the defendants were liable for the value of the machine, and also for such damages as the plaintiff had actually sustained

Nudd vs. Wells et al.

for its non-delivery; and that in estimating that damage they would not be confined to the five cents per hundred pounds for every day's delay, as provided in the contract, after that basis had absorbed the amount of compensation agreed upon for carrying it, but that if the jury saw fit they might disregard that claim as a basis after it amounted to as much as the agreed amount of freight, and find the actual damages, if any were proven, that the plaintiff had sustained;" and to which said addition and qualifications the defendants excepted.

And the court further charged the jury, that if they found that the machine in question was so damaged before arriving at Milwaukee, that it was totally unfit for the purpose intended, that then the plaintiff was entitled to recover the full value of the machine, and also, damages for its detention, and that in estimating the damages for detention, they could take the five per cent. per one hundred pounds for every day's detention, from the time the contract was to be performed, up to the time of the delivery of the machine in Milwaukee, in addition to the value of the machine. And to which ruling and decision the defendants excepted.

The jury retired, and afterwards brought in a verdict for the sum of ten hundred and eighty-seven dollars.

Upon the coming in of this verdict the defendants moved the court to set the same aside and grant a new trial, upon which motion the court made the following decision:

" This cause having come on to be heard by the court, on a motion to set aside the verdict of the jury therein, and for a new trial, and it appearing to the court that the jury, in assessing the damages, had evidently mistaken the charge of the court, and that the said damages are excessive, and said plaintiff having been required by the court to accept, as his damages in this action, the value of the engine mentioned in said plaintiff's complaint, adding thereto five cents on the one hundred pounds of the weight of said box of machinery, for each day's delay in delivering the same, after fourteen days from the receipt thereof by defendants, until it reached Milwaukee, and seven per cent. per annum on the value of the machinery, (reckoned at six hundred dollars,) from the time plaintiff first saw it at Lone Rock, to the date of this verdict, and remit to said defendants all of said verdict over and above such computation, or a new trial be ordered in the cause, and the said plaintiff having elected to receive the amount so com-

puted, in lieu of the verdict of the said jury. The court thereupon overruled the motion for a new trial, and it being ascertained that the amount due the said plaintiff herein, upon such computation, is the sum of eight hundred and twenty-one dollars and twenty cents.

It is therefore ordered," judgment, &c. From that judgment the defendants appealed.

*Finches, Lynde & Miller*, for the appellants, upon the point that the change of venue ought to have been allowed upon the petition of the appellants, cited the following : 1 U. S. Stat. at Large, 79, § 12 ; 9 id., 56, § 4 ; *Gordon vs. Longest*, 16 Pet., 97 ; *Kanouse vs. Martin*, 15 How., 198 ; *Livermore vs. Jenks*, 11 How. Pr., 479 ; *Carpenter vs. N. Y. & N. H. R. R. Co.*, 11 id., 176 ; *Lidder vs. Thatcher*, 12 id., 294 ; 1 Denio, 263, and cases cited.

The supreme courts of some of the states have ordered removals on such application, without any question, if the sureties are sufficient, and the application is otherwise correct. *Beebe vs. Armstrong*, 2 Cond. Rep., 210 ; *Duncan vs. Hampton*, 2 id., 287 ; *Potter vs. Richardson*, 2 id., 355, 461 ; *Johnson vs. Wale*, 2 id., 519 ; *State Bank vs. Morgan*, 2 id. 318 ; *Fitz's Syndie vs. Haden*, 2 id., 425 ; *Beaty vs. Ross*, 1 Flor., 198.

Under the receipt and the custom proved, the liability of the defendants ceased upon the defendants delivering the package to a responsible carrier at Milwaukee. *St. John vs. Van Santvoord*, 6 Hill, 157 ; *Wright vs. Boughton*, 22 Barb., 561 ; *Stratton vs. N. Y. & N. H. R.*, 2 E. D. Smith, 184 ; *Nutting vs. Conn. Riv. R. R. Co.*, 1 Gray, 502–504 ; *Hood vs. N. H. & H. R. Co.*, 22 Conn., 502 ; *Elmore vs. Naugatuck R. Co.*, 23 id., 457; *Naugatuck R. R. Co. vs. Waterbury Button Co.*, 24 Conn., 468.

Upon the question of damages sustained by the delay to deliver, they cited *Harmony vs. Bingham*, 2 Kern., 113 ; *Wilkinson vs. Laughton*, 8 John., 213 ; *Amony vs. McGregor*, 15 John., 24 ; Sedg. on Dam., 369, 70, 71; *Hackett vs. B. C. & M. R. R. Co.*, 35 N. H., 401; *Laurents vs. Vaughen*, 30 Vt., 90 ; *Furlong vs. Polleys*, 30 Maine, 491 ; *Wallace vs. Vigus*, 4 Blackf., 261.

*A. C. & H. A. Eastland*, and *M. M. Jackson*, for the respondent, upon the question of the change of venue to the United States District Court, cited 4 Cal., 368 ; 11 id., 181; 3

Dall., 467; 19 Geo., 279; *Aldrich vs. Rice*, decided by the supreme court, Wisconsin, 3 Wis., 591.

Upon the question that the defendants were liable as common carriers, notwithstanding the limitations attached to their receipt, they cited, Ang. on Com. Carriers, 250–2; *Hollister vs. Newton*, 19 Wend., 234; *Cole vs. Goodman et al.*, id., 251; 2 Green Ev., §§ 215, 216, 218. The liability having commenced to run, continues until delivery. 2 Kent, 604; Chit. on Con., 489; Ang. on Com. Carriers, § 282 and note.

*By the Court*, PAINE, J.    It is evident that the jury in this case found a verdict much larger than the plaintiff was entitled to by any legal rule of damages.    But if the excess was clearly ascertainable, and the proper amount of damages might be readily fixed by the application of a settled rule of law to the evidence, perhaps the practice adopted by the court below, of allowing the plaintiff to remit the excess, and then refusing a new trial, would be proper.    The practice of remitting where the illegal part is clearly distinguishable from the rest, and may be ascertained by the court without assuming the functions of the jury and substituting its judgment for theirs, is well settled.    Thus, where a verdict allows interest where none is allowed by law, where it exceeds the amount claimed, or in any other case where that which ought not to stand is clearly ascertained, the remittitur may be allowed. But it ought not to be carried so far as to allow the court, when a jury has obviously mistaken the law, or the evidence, and rendered a verdict which ought not to stand, to substitute its own judgment for theirs, and after determining upon the evidence what amount ought to be allowed, allow the plaintiff to remit the excess, and then refuse a new trial.    There are authorities that would sustain even this, as *Collins vs. Railroad Company*, 12 Barb., 492; and *Clapp vs Railroad Company*, 19 id., 461.    But we are unable to see· how such a practice can be sustained, in such cases as those

Nudd vs· Wells et al.

were, without doing the very thing which they professed not to do; that is allow the court to substitute its own verdict for a wrong verdict of the jury, and on the plaintiff's accepting that, refusing a new trial. The true rule on the subject is stated in *Thomas vs. Westnack*, 13 Texas, 580 ; and *Lambert vs. Craig*, 12 Pick., 199. See also *George vs. Law et al.*, 1 Cal., 363.

It is somewhat difficult to see how the court could arrive at the exact amount of damages proper to be allowed in this case, without violating the rule as we have stated it. Because the plaintiff testified that his model was of the value of $3000. It is true his opinion may have been very erroneous, founded as he said it was on the speculative profits to be realized from his patent. But then for the court to determine on the whole evidence what was the true value of the machine, involved the weighing of this evidence and the reduction of it to reasonable limits ; and this was the very function of a jury. But without determining whether the court might properly have done this, consistently with the rule above laid down, we think it was mistaken in the rule of damages which it finally allowed. The general rule as to damages for non-delivery of goods by a common carrier, is the value of the goods, with interest from the day when they should have been delivered. Sedgewick on Dam., 355. The court allowed this, and in addition thereto five cents on each hundred pounds weight of the box of machinery per day, after fourteen days from the time of delivery to the carrier, until its arrival in Milwaukee. We think the language of the contract on which this allowance was evidently founded, extendd no f arther than to the amount of the freight. It provides for the payment of freight at the rate of $1,90 per hundred pounds, and in the same sentence, that there shall be a " deduction " allowed of five cents on each hundred pounds for every day's delay after fourteen. The word " deduction "

obviously limits the effect of this agreement to the allowance of an abatement of the freight, because from that it was to be deducted.   And when the whole of it had been deducted the stipulation was executed.   This clause was obviously intended to provide for a delay of a temporary character, supposing the contract to be performed in every other respect, except in point of time.   And it clearly was not intended as provision for stipulated damages in case of an entire nonperformance, so that the employer had to resort to his remedy against the carrier for the whole value of the property.   To consider it thus as a continuing agreement, would lead to great injustice.   If the carrier by any accident or neglect had destroyed the property so as to render himself liable, the owner might wait as long as the statute of limitation would allow, and then sue and recover the whole value and interest, and also the amount stipulated to be paid for delay.   Such a result was not contemplated by the parties in making this provision.   It was merely an agreement to reduce the charges so much for delay.   But if the carrier failed entirely, then the ordinary rule of damages was applicable.

We think also that the judge erred in instructing the jury that under the pleadings in this case the plaintiff might recover notwithstanding the article was transported and delivered according to the contract, provided it was so injured, before its delivery as to be entirely unfit for the purpose for which it was intended.   That the plaintiff would have a right of action for such injury is clear.   But it is an entirely distinct ground of recovery from that of non-delivery.   And here the plaintiff has sued for the latter only.   He avers that the carriers did not transport and did not deliver the article according to the contract.   If they could prove that they did, that would be an answer to the complaint.   And certainly the plaintiff ought not then to be allowed to prove that notwithstanding they had delivered it as they agreed, they had

first damaged it and so recover for that. He had not notified them to defend against any such allegation, and they ought not to be presumed ready to defend against it, without notice. Suppose the carrier had brought the article to Milwaukee within fourteen days after its receipt and had delivered it to the plaintiff, and he had afterwards brought this action alleging simply a non-delivery. On the proof of a delivery, could he then go into proof of damages to the machine and recover on that? Clearly not. And he could no more do it here, if a delivery to the Milwaukee and Mississippi Railroad Co. was a delivery according to the contract, under the custom, as this part of the charge assumed.

We apprehend that the only question in issue in this case was whether the model had been transported and delivered according to the contract. No time having been fixed within which it was to be delivered, the carrier was bound to deliver it within a reasonable time. Angell on Carriers, § 283, 284. And there can be no doubt that here it was not so delivered. It was sent from Chicago to St. Paul, and did not arrive in Milwaukee for more than a year after it was delivered to the carrier. This was not within a reasonable time, and the plaintiff had a clear right of action for its non-delivery. And although under the custom the delivery to the Milwaukee and Mississippi R. R. Co. would have been a good delivery if made in time, yet after a right of action has accrued for non-delivery within a reasonable time, we do not think the Milwaukee and Mississippi Company could waive the owner's right by an accepatance of the goods afterwards. Yet he might waive it himself. And here the evidence is that he demanded the article of the defendants in Milwaukee in August, 1858. This was waiving his right to hold them responsible for the value of the goods for non-delivery within the time, and still insisting on a delivery by them. If therefore they had then delivered, or if they had already deliver-

ed as the proof shows, this would preclude the plaintiff from recovering the value for the mere non-delivery.

We think therefore that the only question which the court under the pleadings could properly have submitted to the jury would have been whether the article was delivered at Milwaukee within a reasonable time, and that it would have been bound to instruct them that, as a matter of law it was not, there being no dispute in the evidence as to the facts; but that it should also have instructed them, that if after they were in fact delivered at Milwaukee, the plaintiff still demanded them, and insisted on obtaining the goods, that was a waiver of his right to recover their value, for mere non-delivery at the time. He would still have had the right to an abatement of the freight according to the contract, and perhaps to any other direct immediate damage occasioned by the delay, but not to the value of the article. He would also have his action for any damage done to the machine, but if he relied on that he should allege it.

We do not deem it necessary to pass upon the other questions in the case, but for these reasons, the judgment must be reversed, and the cause remanded for a new trial.

