THOMAS, BADGLEY & WENTWORTH MANUFACTURING COMPANY vs. WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY.

*March 7 — March 31, 1885.*

*Carriers: Injury to machine intended for special use: Damages.*

1. By the negligence of a carrier a machine was so damaged in transportation that the cost of repairing it would have amounted to the price of a new machine. *Held*, that the consignee was justified in refusing to receive it, and might recover from the carrier the value of the machine and the amount paid for its carriage, with interest from the time when it should have been delivered.

2. But, not having been informed to what use the machine was to be put or that it was to be used in the business of the consignee, the carrier was not liable for the damage resulting from the loss of its use while another machine was being procured to supply its place. *Brown v. C., M. & St. P. R'y Co.* 54 Wis. 342, distinguished.

APPEAL from the Circuit Court for *Milwaukee* County. The facts are sufficiently stated in the opinion. The defendant appealed from the judgment.

For the appellant there was a brief by *Chapin, Dey & Friend*, and oral argument by *Mr. Dey*. They argued, among other things, that as between shipper and carrier, when the articles are designed for a special purpose, that

Thomas, Badgley & Wentworth M. Co. vs. Wabash, St. L. & P. R'y Co.

fact must be communicated to the carrier at the time of contract, as a condition precedent, to make the foundation for special damages such as were recovered in this case. *Chicago, B. & Q. R. R. Co. v. Hale*, 83 Ill. 360; *Illinois C. R. R. Co. v. Cobb*, 64 id. 128–141; *Hammer v. Schœnfelder*, 47 Wis. 456–9; 1 Suth. on Dam. 77; *Brayton v. Chase*, 3 Wis. 456; *British Columbia, etc., S. M. Co. v. Nettleship*, L. R., 3 C. P. 499. Though the action be in tort, the tort is founded on a breach of the contract, and the measure of damages is the same. 2 Addison on Torts, 1187; Moak's Underhill on Torts, 102; Wood's Mayne on Dam. 70; 2 Sedg. on Dam. 562, 563, 366; *Ingram v. Rankin*, 47 Wis. 409.

For the respondent there was a brief by *Van Dyke & Van Dyke*, and oral argument by *Mr. Geo. D. Van Dyke*. They contended, *inter alia*, that the case of the loss of an article expressly designed for use, and not for barter or trade, and not found in the market, is a well-recognized exception to the general rule that the measure of damages is the value of the property destroyed, at its destination. Hutchinson on Carriers, § 776; *Priestly v. N. I. & C. R. R. Co.* 26 Ill. 205; *Chicago, B. & Q. R. R. Co. v. Hale*, 83 id. 362; *Fairfax v. N. Y. C. & H. R. R. R. Co.* 73 N. Y. 172; *Green v. B. & L. R. R. Co.* 128 Mass., 221; 3 Suth. on Dam. 477, 482. Compare *Cory v. Thames Iron Works*, L. R. 3 Q. B. 181; *France v. Gaudet*, 6 id. 199; *McHose v. Fulmer*, 73 Pa. St. 365; *Cockburn v. Ashland Lumber Co.* 54 Wis. 628–9; *Satchwell v. Williams*, 40 Conn. 371. The evidence shows that the defendant had notice that this was such an article. But it is unnecessary to rely on that evidence. The action is founded in tort, and the wrong-doer is liable for all injuries resulting directly from the wrongful act, whether they could or could not have been foreseen. *Brown v. C., M. & St. P. R'y Co.* 54 Wis. 354; Hutchinson on Carriers, §§ 737, 738, 740, 742; Angell on Carriers, § 423; *Whittenton Mfg. Co. v. Memphis & Ohio R. P. Co.* 21 Fed. Rep. 896; *Morrison v.*

*P. & C. Const. Co.* 44 Wis. 405; 1 Suth. on Dam. 20, 24, 47, 74, 84–5. The action might have been trover, and then, certainly, damages for the loss of use of the machine might have been recovered. Hutchinson on Carriers, § 742 and note 5. See, also, *Williams v. Phelps,* 16 Wis. 87; *Zitske v. Goldberg,* 38 id. 224; *Barney v. Douglass,* 22 id. 466; *Jolly v. Single,* 16 id. 292; *Ingram. v. Rankin,* 47 id. 406; *Allen v. Fox,* 51 N. Y. 562.

COLE, C. J. On the 10th of November, 1882, the plaintiff, as consignee, caused to be delivered to the defendant, a common carrier, at St. Louis, a pipe-machine, circular shaft, box of dies, and wrenches accompanying and being a part of the pipe-machine, to be transported over its road and connecting lines to Milwaukee. The machine and its attachments were badly broken and destroyed while in the custody of the defendant through the negligence of its servants. The machine was a patented one, and the right to make and sell it was vested in the manufacturer at St. Louis, of whom it was purchased by the plaintiff. The machine was devised for cutting pipe and making nipples, and was ordered by the plaintiff to be used in its business in Milwaukee, of fitting pipe and manufacturing brass goods, etc. The plaintiff sues to recover damages for the loss of the machine and the loss of its use in its business while another was being procured. The case was tried by a jury, which found a special verdict. The plaintiff had judgment for the value of the machine, which was proven to be $275, and for the loss of its use for eighty-five days, at the rate of $1.50 per day, and interest thereon from the commencement of the action.

The questions presented on the appeal are as to the proper rule of damages. There was evidence which tended to show that the machine, though badly broken and some of its parts destroyed, might have been repaired by the patentee at St. Louis, who was the manufacturer. The plaintiff refused to

accept the machine at Milwaukee, but left it in the possession of the carrier, and ordered a new machine of the manufacturer. One question arising in the record is whether it was the duty of the plaintiff, under the circumstances, to have received the machine in its damaged condition, and to have made proper and reasonable exertions to have it repaired, so as to render the loss to the carrier as light as possible.

There is a class of cases which decide that it is not only the moral but the legal duty of a party who seeks redress for another's wrong, to make use of his opportunities of lessening the damage caused by the other's default. If it had been within the power of the plaintiff to have supplied the broken parts of the machine, or to have repaired it with reasonable labor and expense, it might have been its duty to have done so within this rule of law. But the jury found that the machine when delivered was useless; that the cost and expense to the plaintiff to repair it would have amounted to the price of a new machine. This finding is criticised by the counsel for the defendant, but we are not inclined to disturb it. As we have said, the machine was a patented one; its parts were not kept for sale in the open market; and there was evidence that it would cost any one but the manufacturer more to make the patterns for the castings than the price of a new machine. The plaintiff, therefore, could not have had the machine repaired in Milwaukee at any saving to the carrier. But it is said it might have returned the machine to the manufacturer in St. Louis, who testified that it could have been repaired for $75. True, the manufacturer, in answer to this hypothetical question, namely, "Supposing the bottom part of the machine was broken in two pieces, the attachments consisting of a box of dies broken open and contents scattered in the car, oil-cup on the machine burst, skids on which machine and attachments were originally placed broken, legs or standard of

machine broken, and rods connected with them bent, what was the damage, in your estimation, to the machine?"— the witness said the question was a difficult one to answer, but added, as we understand him, that if the damages supposed included all that was done to the machine, and none of the parts were missing, and no other injury was done to it, then it would cost about $75 to repair it.. But the witness subsequently modified his statements upon this point by saying that with the fragments of the machine which he received from the defendant, it would cost not less than $250 to repair it. It appeared that some of the most expensive parts were missing, and in the state of the proof the jury might well find, as they did, that the cost and expense to the plaintiff at the time to have the machine repaired by the manufacturer, and the broken parts replaced, would be as much as the price of a new machine.

It is very clear that the machine in its damaged condition was of no value to the plaintiff. It was not a case of a partial but of a total loss, so far as plaintiff was concerned. The general rule of damages for the loss of goods by a carrier, where it is liable for such loss, is the value of the goods at the destination to which it undertook to carry them, with interest on such value from the time when the goods should have been delivered. *Nudd v. Wells*, 11 Wis. 407; 2 Sedg. on Dam. 94, note *b.;* Hutchinson on Carriers, § 769. The plaintiff did not claim to recover more for the machine than it had paid for it at St. Louis, to wit, $275. It appeared that it had paid the freight, $3.85, which of course should be added to the recovery. So our conclusion upon this branch of the case is that the court below was right in allowing the plaintiff to recover upon the verdict the cost of the machine. There was a stipulation in the bill of lading that in case of loss or damage to goods during transportation, whereby the defendant incurred a responsibility, that then it should only be liable for the value of the

property computed at the place and time of shipment. This was precisely the extent of the recovery on this item of damages.

The next question is, Was the plaintiff entitled to recover for the loss of the use of the machine while another was being procured to supply the place of the one destroyed? This question, upon the circumstances of this case, we think must be answered in the negative. In the first place it is to be observed that there is no allegation in the complaint, and no proof was given on the part of the plaintiff which tended to show, that the defendant had notice of the use to which the machine was to be put, or even knew that the plaintiff intended to use it in its business. On the contrary, the agent of the defendant who made the contract of shipment says he had no notice of the purpose for which the machinery was to be used. He said he was applied to by the manufacturer in St. Louis about this particular shipment, and gave special rates, less than the regular tariff, on representation made by the manufacturer that the goods were not liable to injury, and that he wanted to introduce the machine, which was a new one, through the west, and wished the assistance of the witness in doing so. This is all the knowledge the defendant had about the property, or the use to which it was to be put. It is said the fact that the consignee in the bill of lading was a manufacturing company was sufficient notice that the machine was intended to be used by it in its business. We do not think so. The defendant certainly had no notice of the business in which the plaintiff was engaged, and did not know that this machine had been procured for fitting pipe and making nipples. Should we presume — as we have no right to do — that the defendant had knowledge of plaintiff's business, surely we could not presume that this machine was ordered by it for immediate use.

This being the state of the evidence, on what ground can

the plaintiff claim damages for loss in the use of the machine? The president of the plaintiff testified that his company was doing business of steam-fitting and selling pipe at wholesale, and in the fall of 1882 he was told he would need a machine to cut the pipe. This was the reason for buying the machine. He says: "We were, besides, doing some steam-fitting ourselves, and, of course, we have to cut pipe all the time to get special lengths, and instead of using men we paid a man to do it with the machine. The machine would do the work of one man." This is really all there is in the case to base a claim for loss in the use of the machine upon. The defendant did not know what the machine was designed for; did not know the use to which it was to be put; did not even know the plaintiff would use it; and, of course, did not know that the plaintiff would sustain any special damage if the property failed to be delivered promptly, in good order.

From the nature of the subject it is difficult to state an inflexible rule of damages which will apply to all contracts. This court has often referred to, and has practically acted upon, the rule laid down in the leading case of *Hadley v. Baxendale*, 9 Exch. 341. In that case the plaintiffs, who were owners of a flour-mill, sent a broken iron shaft to an office of the defendant, a common carrier, to be conveyed to the consignee, to have a new shaft made. The defendant's clerk was told that plaintiffs' mill was stopped, and that the broken shaft must be delivered immediately to the consignee, but it was delayed for an unreasonable time. In consequence of the delay the plaintiffs did not receive the new shaft for some days after the time they ought to have received it, and they were unable to work their mill for want of the new shaft, and thereby incurred a loss of profits. The court held that under the circumstances such loss could not be recovered in an action against the common carrier, because the special circumstances were never communicated

Thomas, Badgley & Wentworth M. Co. vs. Wabash, St. L. & P. R'y Co.

to it by the plaintiffs. ALDERSON, B., in giving the decision, states the rule of damages as follows:

" Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from the breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

This rule has been sometimes criticised, and it has been said that, generally, when parties enter into a contract, they do not contemplate its breach or the probable result of a breach, and that the rule might be more accurately expressed. See PALLES, C. B., in *Hamilton v. Magill*, 12 L. R. (Ireland), 202. But, without refining on the rule, its application to the question we are considering is obvious and decisive; for here the defendant was not informed by the plaintiff that the machine was one which it needed for use in its business of cutting and fitting pipe, and that it was procured for that purpose. If one desires to trace the judi-

cial discussion of the rule in *Hadley v. Baxendale*, he will find a most excellent and accurate analysis of the English and American decisions in note *a*, 1 Sedg. on Dam. (7th ed.), top p. 218.    Also see note 2 to sec. 772, Hutchinson on Carriers, 597.

In *Brayton v. Chase*, 3 Wis. 456, which was an action by the vendee against the vendor for failure to deliver a reaper which the plaintiff purchased to harvest his crops, the plaintiff sought to prove that he suffered great loss and damage in his crops, and in the extra expense of hiring hands, by reason of the non-fulfilment of the contract to deliver.   The evidence was excluded, and this court affirmed the ruling, holding that such damages did not result naturally and directly from the injury complained of.   It may be doubtful whether this decision is entirely consistent with *Richardson v. Chynoweth*, 26 Wis. 656; *Smeed v. Foord*, 1 El. & El. 602; *Gee v. L. & Y. R'y Co.* 6 Hurl. & N. 211; *Collard v. S. E. R'y Co.* 7 Hurl. & N. 79; *Elbinger Actien-Gesellschafft v. Armstrong*, L. R. 9 Q. B. 473; *Wilson v. L. & Y. R'y Co.* 9 C. B. (N. S.), 632; *Griffin v. Colver*, 16 N. Y. 490; *Vicksburg & M. R. R. Co. v. Ragsdale*, 46 Miss. 458; and cases of that class.   For, as we understand the *Brayton Case*, the vendor knew that the reaper was wanted for the purpose of harvesting the plaintiff's crop that season.   If it were not delivered in time for that purpose the parties might well be presumed to have known that the vendee would be put to additional expense in securing his crops.   But still the case is fully supported by *British Columbia, etc., Saw-mill Co. v. Nettleship*, L. R. 3 C. P. 499.   In this case "the plaintiffs delivered to the defendant's servants, on a quay at Glasgow, for shipment on board the defendant's vessel which lay along-side, several cases containing machinery which was intended for the erection of a saw-mill at Vancouver's island.   The master gave a bill of lading for them, describing the cases as containing "merchandise."   The defendant

knew generally of what the shipment consisted. On the arrival of the vessel at her destination, one of the cases, which contained machinery without which the mill could not be erected, could not be found on board, and the plaintiffs were obliged to send to England to replace the lost article. Held, that the defendant was liable for the loss of the machinery, as delivery to the defendant's servants alongside the vessel was equivalent to a delivery on board. Held, also, that the measure of damages for the breach of the contract was the cost of replacing the lost articles in Vancouver's island, with interest at five per cent. upon the amount until judgment, by way of compensation for the delay."

But we deem it unnecessary to pursue this discussion further. The case of *Brown v. C., M. & St. P. R'y Co.* 54 Wis. 342, is referred to by plaintiff's counsel to sustain the claim for damages for loss of the use of the machine; but that was a case for a personal injury and has no application to this case. We have already said that the jury found that the machine was so damaged, while in the custody of the defendant as carrier, as to be entirely useless to the plaintiff. The plaintiff is therefore entitled to recover the value of the machine, found to be $275, including the freight paid by plaintiff of $3.85, and interest on this amount from November 22, 1882, the time the property reached its destination.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment on the verdict in accordance with this opinion.