## HANSON v. HENDERSON et al.

Where, in an action for failure to keep cattle, the court found that the verdict for defendant on the counterclaim demanded compensation for keeping the cattle, and for loss of his own cattle by reason of an infectious disease with which plaintiff's cattle were afflicted, was excessive, and there was no definite basis for remitting a part thereof, the verdict must be set aside, instead of reduced.

An excessive verdict in a trial involving unliquidated damages is not susceptible of correction by reducing the amount thereof, but must be set aside and a new trial ordered.

(Opinion filed, April 3, 1906.)

Appeal from Circuit Court, Hand County. Hon. Loring E. Gaffy, Judge.

Action by Alfred J. Hanson against James Henderson and another, co-partners doing business under the firm name of James Henderson & Son. From a judgment for defendants, plaintiff appeals. Reversed.

*Crawford & Taylor*, for appellant. *W. A. Lynch* and ,*T. H. Null*, for respondents.

FULLER, P. J. Plaintiff brought this action to recover $2,890, damages resulting from alleged negligence on the part of the defendants in failing to provide suitable food and shelter for 175 cattle which they undertook to keep for him pursuant to the following agreement: "Wessington, So. Dak., April 7th, 1902. This agreement, made this 7th day of April, 1902, between Bert J. Henderson, of Wessington, So. Dak., and A. J. Hanson of Poplar Grove, Ill., as follows: Said A. J. Hanson has furnished said Bert J. Henderson 175 cattle to be kept one year by said Bert Henderson at seven dollars ($7.00) per head for the year. Said Bert J. Henderson to keep cattle in a first-class manner and use all efforts possible to prevent loss. Said A. J. Hanson to pay for these cattle as above mentioned April 6th, 1903." For a complete defense to the cause of action stated in the complaint defendants plead strict compliance with all the terms of their contract and denied that they were in any manner responsible for the death of certain of the cattle or for the emaciated condition of such as lived through the winter. Further, and by way of counterclaim, they sought to recover full compensation for keeping the cattle for one year at $7 per head together

with $350 damages sustained by the loss of four head of their own
cattle by reason of an alleged infectious disease with which plain-
tiff's cattle were afflicted and an affirmative judgment aggregating
$1,556 was demanded.  Upon testimony which was conflicting upon
several material points, relating to the question of damages claimed
by the respective parties, the jury returned a verdict in favor of
the defendants in the sum of $700, which, upon application of
plaintiff for a new trial, on the ground of excessive damages award-
ed defendants under the influence of passion and prejudice, the trial
court found to be excessive and ruled that unless the defendants
would consent that the same be reduced to $500 a new trial would
be granted.  The defendants having thereupon accepted this propo-
sition of the court to reduce the verdict of $700 to $500 the motion
for a new trial was overruled and plaintiff preserved an exception
upon the record.

The fact that 122 head of these weak and exceedingly thin
cattle were taken from defendants' ranch in March, 1903, and sold
for good prices on the Chicago and Sioux City markets, where all
cattle are subjected to government inspection and rejected if not
found to be healthy, is a strong circumstance in favor of plaintiff's
contention that they were free from disease.  And the further fact
that the culls left on account of their inability to walk to the rail-
way station were soon afterward taken into other hands and each
gained nearly 300 pounds during the season of 1903 makes it
highly improbable that the cattle were afflicted with tuberculosis or
any other dangerous ailment.  In addition to the foregoing which
stands proved, the state veterinary surgeon, a man of acknowledged
skill and learning as to the diseases of domestic animals, officially
examined these cattle on the 9th day of March, 1903, and testified
in part as follows: "The condition of these cattle at that time was
very thin.  I found no evidence of disease among them. * * * The
absence of any disease led me to believe that they had not had
enough to eat."  Had the jury found that defendant's had substan-
tially complied with their contract in feeding and sheltering these
cattle, and that their pitiable condition was due to disease rather
than starvation, as the evidence tends most strongly to show, their
verdict would doubtless have been for fully $1,600 and it is diffi-

cult to imagine by what process of reasoning $700 was determined. upon as the exact amount of damages to award the defendants. Now the trial court justly found this sum to be in excess of what the defendants were entitled to recover under the evidence and, in the absence of any definite rule of admeasurement or basis for mathematical calculation, the verdict should have been set aside instead of changing it into one that the jury had not given. The case of Murray v. Leonard, 11 S. D. 22, 75 N. W. 272, is an authority to the point that where a jury in considering a question of unliquidated damages has returned an excessive verdict the court has. no reliable basis for remitting a part thereof, and ought not to substitute its judgment for theirs but should grant a new trial. In reversing an order denying a motion for a new trial in a case similar to this upon principle, and where the trial court invaded the province of a jury by thus measuring the amount of damages for which the verdict should have been returned, the Texas court say: "The trial judge concluded that the verdict was excessive, as he required. plaintiff to enter a remittitur of $3,000 as a condition to his overruling the motion for a new trial. The damages are assessed by the jury. If the verdict is excessive, the judge, in actions like this,. has no measure by which to determine how much it is excessive. His attempt to do so is an invasion of the rights of the jury. His. only course in such a case is to grant a new trial." So, in Nudd v. Wells, 11 Wis. 407, it is said that: "Where a jury find a verdict for a greater amount than the party is entitled to have under the rules for damages, and they cannot be ascertained and the proper amount fixed by the court, by the application of those rules; the court cannot fix the amount, and if the party will remit the excess, refuse to grant a new trial. Such a course would be a substitution of the judgment of the court for the verdict of the jury, upon a question which the jury alone could determine." That an excessive verdict reached at the conclusion of a trial involving unliquidated damages is not susceptible of correction by reducing the amount thereof, and must be set aside and a new trial granted, is a proposition well sustained both by reason and authority. George v. Law et al., 1 Cal. 363; Cassin v. Delany, 38 N. Y. 181; Bell v. Morse, 48 Kan. 601, 29 Pac. 1086; Shayne v. White, 81 N. Y. Supp. 372.

Without imputing to the jury palpable disregard for the rights of the plaintiff, it is clear that the case should be retried; and for the reasons stated in this opinion the judgment appealed from is reversed.