R. E. WILKINS v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 16 October, 1912.)

1. Carriers of Goods—Damaged Shipment—Duty of Consignee—Entire Loss.

While ordinarily the consignee should accept a shipment of goods damaged by the carrier's negligence, and minimize the loss so far as it can reasonably be done, the principle does not obtain when the loss is entire; and, in this case, the consignee was not required to accept a keg of molasses he had bought for his own use when by the delay of the carrier the molasses had soured and become worthless, and although the keg, an incident to the shipment, might, perhaps, have been worth 25 cents to a person desiring one.

2. Carriers of Goods—Penalty Statutes—Shipment Refused—Entire Loss—Damages Established.

A consignee may recover the penalty provided by Revisal, sec. 2634, for the failure of the carrier to pay a claim for damages to a shipment of goods, within the specified time, notwithstanding he may have refused to accept the shipment, when it appears that the loss was entire and he has established his damages as being the value of the goods shipped, according to his demand.

3. **Carriers of Goods—Contracts—Bill of Lading—Demand—Knowledge of Agent—Computation of Four-months Period.**

> The clause in a carrier's bill of lading requiring that written demand for damages be made within four months after delivery of the shipment or within four months after the goods should have arrived, will not bar the consignee of his right to recover when it appears that the shipment arrived in a damaged condition, and all the facts and circumstances were fully known to the carrier's agent upon its arrival; and the time wherein the consignee was misled by the carrier's agent as to the time of the arrival of the goods will not be counted against the consignee in computing the four-months period stipulated for by the carrier in the bill of lading.

APPEAL by defendant from *Allen, J.,* at June Term, 1912, of LENOIR..

Civil action. The action was instituted for the recovery of $4.85 damage to a keg of syrup shipped from Bamburg, South Carolina, to the plaintiff at Kinston, North Carolina, and for $50 penalty for failure to pay the claim within the time allowed by statute. The defendant denied liability and denied that the claim was ever properly filed, or that claim was filed within the time allowed by the contract or by law.

On the trial plaintiff testified in his own behalf in substance as follows: "I bought 10 gallons of an especially fine grade of syrup for table use, in Bamburg, S. C., on 31 March, 1910, paying in cash 42½ cents per gallon for the syrup and 75 cents for the keg. The bill of lading was sent four or five or six days later. This is the bill of lading. [Bill of lading is introduced by the plaintiff.] Bill of lading is dated 31 March, 1910, and is made out in plaintiff's proper name. I made inquiry at both depots to know if the syrup had come. I made continuous effort to get the syrup. Some days after I had gotten home—it may have been three weeks—I asked if it had come, and kept it up, inquiring every time I came home. Sometimes I stayed maybe five weeks. I found out it had not been delivered. I went down to see both agents. I went to the A. C. L. depot once or more times. I also asked them many times over the phone, and also went personally. The A. C. L. notified me some time the latter part of August or in September-

ber, 1910, by card, that it was there. When I made inquiry
to get it out, they said it was not there. I asked what became
of it. The agent said it had been delivered. I said, 'Who to?'
I said, 'Look again.' He looked and found it, and I went
down and examined it and found it was sour. I refused to
take it. It was in bad condition and sour and of no value to
me, and I so stated to defendant's agent, and he helped sample
it. I filed claim in writing with Mr. Cleary, agent of A. C. L.
Railroad Company in Kinston. The ·exact date I filed the
claim in writing is 22 November, 1910, being the date the
agent gave me receipt for bill of lading. Agent wanted bill of
lading to go in the claim filed. He wanted me to give it over
to him. I said no, that the syrup was in his hands. I would
not give it to him until he said, 'We would rather you would,'
and I said, 'Out of courtesy to you, I will do it; but I don't
have to do it.' My claim was for damages to the syrup—
$4.85, actual cost of syrup and keg. The claim has not been
paid.

"I filed claim for syrup and keg, which is $4.85. I paid
75 cents for the keg. I don't know that keg was in good order,
and keg soured with the contents. So far as I know, the keg
was intact, and the trouble was the sour liquid. Syrup was
of absolutely no value. I don't know that it would make vine-
gar. It was syrup I bought. I didn't want it otherwise. It
was August or September. It must have been September. It
was the latter part of August or September. I would not know
the date, except for this receipt [witness holding receipt for
bill of lading in his hand]. I presented claim for $4.85—
$4.10 for the syrup and 75 cents for the keg. The bill of
lading was not the claim. I presented written claim. I remem-
ber presenting separate written claim, other than bill of lading.
It was the bill of cost of the syrup, and I presented the claim
with the bill of lading. I refused to take it. I refused to
take the keg. It would not have paid me to take it. A sweet
keg, I suppose, is worth 75 cents and a vinegar keg 25 cents.

"Bamburg is 150 or 200 miles on the Southern from Kin-
ston, the Southern being a connecting ·carrier on the A. C. L.
Railroad Company."

Defendant offered in evidence bill of lading, and the station agent at time of trial testified that he was unable to say from records in the office that the keg of syrup had arrived at Kinston on 12 April, 1910, and on the waybill was consigned to A. E. Williams and showed a delivery from Southern to A. C. L. at Columbia, S. C.

The court, among other things, charged the jury:

"If the keg could have been utilized in any way, so as to save anything to the company, it was his duty to do it; but if the whole thing was worthless, so there would have been no saving to the railroad company, then he would not be responsible for not taking it out. The burden is upon the plaintiff to show by the greater weight of the evidence that he has been damaged, and to what extent, and to what amount. So, if you find by the greater weight that they did receive this syrup and retained it till it was worthless—the claim is that it was there from April to August, and during the summer it soured and became worthless—and if you find that it is so, and the syrup was worthless, then you will say that the value is $4.10 and 75 cents, making $4.85, or a less amount. Whatever you find to be the amount of his damages, so answer it in figures, whatever you find that amount to be."

Defendant excepted to the charge, and, after verdict, entered motion as follows:

"Upon the admission of the plaintiff that a reasonable time for the arrival of the shipment in controversy was ten or fifteen days from 31 March, 1910, and the evidence of the plaintiff being that the shipment did arrive at Kinston on 12 April, 1910, and the plaintiff further admitting that he filed the claim sued on with the defendant on 22 November, 1910, the defendant moved the court to adjudge that the plaintiff was not entitled to recover the penalty demanded in this action."

*W. D. Pollock and G. V. Cowper for plaintiff.*
*Rouse & Land for defendant.*

HOKE, J. Section 2634, Revisal, in effect provides that every claim for loss or damage to property in shipment by a common carrier shall be adjusted as to intrastate shipments within sixty

days from time of filing same with the company's agent and within ninety days in case of shipments from without the State, under penalty of $50 for "each and every such failure," and with proviso that the penalty is not enforcible unless the party aggrieved in his action shall recover the full amount of the claim. Defendant resists recovery:

1st. Because the amount of the claim should be reduced by the value of the keg.

2d. By reason of a clause in the bill of lading in terms as follows: "Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

But on the facts in evidence, we are of opinion that neither position can be sustained.

In contracts of affreightment, the consignee under an ordinary bill of lading may not, as a general rule, reject the goods because the same have been wrongfully damaged in the course of shipment. Under usual conditions he must receive the goods and hold the company for the injury done, and he is required further to do what good business prudence would dictate in the endeavor to minimize the loss. The principle, however, does not obtain when the "entire value of the goods has been destroyed and the injury amounts practically to a total loss." In such case the consignee is justified in refusing the goods, and may sue for the entire amount. Hutchison on Carriers (3d Ed.), sec. 1365; *Manufacturing Co. v. R. R.,* 62 Wis., 642; *Brand v. Weir,* 57 N. Y. Supp., 731; 5 A. and E. (2d Ed.), 384.

And so it is here. This was a shipment of syrup, and the evidence justified a verdict for the entire loss. The keg was only an incident, too small to be regarded—25 cents at the most—and the claimant testified that it would not pay him to try and utilize it. And we do not think on the facts as presented that the restrictive stipulations in the bill of lading afford protection for defendant. There is authority to the

effect that on these facts, when the goods are in evidence, rejected on account of their damaged condition and all the facts and circumstances fully known to the company's agent, the provision relied upon should be held to have no application whatever. *Kime v. R. R.,* 156 N. C., 451; 6 Cyc., p. 507; Moore on Carriers, p. 337. And in any event we are of opinion that the time which elapsed while the goods were in the defendant's depot and when the consignee was misled as to their placing by assurances to the contrary, on the part of defendant's agents, should not be counted to the claimant's prejudice. Under these circumstances, the offer to deliver in August should be held as the time of delivery under the first clause of the bill of lading, if the same applies, and to waive or displace the requirement contained in the second clause, that the "claim be filed within four months after a reasonable time for delivery has elapsed." Hutchison on Carriers, sec. 444; Moore on Carriers, pp. 335-336.

In any aspect of the matter, therefore, we are of opinion that the stipulations of the bill of lading do not affect the result, and the objections urged to the validity of plaintiff's recovery must be overruled.

There is no error, and on the record the judgment is affirmed.

No error.