**BILTMORE MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

**OVERNITE TRANSPORTATION COMPANY, Inc., Defendant and Third-Party Plaintiff,**

**Universal Carloading and Distributing Company, Inc., Third-Party Defendant.**

**Civ. A. No. 1660.**

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 8, 1958.

---

**892**

Harkins, Van Winkle, Walton & Buck, Herbert L. Hyde, Asheville, N. C., for plaintiff.

Uzzell & DuMont, Asheville, N. C., for Overnite Transp. Co., Inc.

Horton & Hyldburg, Asheville, N. C., for Universal Carloading & Distributing Co., Inc.

WARLICK, District Judge.

This action was filed by plaintiff against Overnite Transportation Company, Inc., under Sec. 20(11) of Title 49 U.S.C.A., on March 5, 1957. In it plaintiff seeks a recovery for damage to merchandise shipped to it by Sears, Roebuck and Company in Chicago. The amount sought as a recovery is $3,960.04.

Plaintiff is a North Carolina corporation and the defendant Overnite is incorporated under the laws of Virginia, and is a common carrier by motor vehicle, engaged in Interstate Commerce and operating in and through North Carolina. Jurisdiction is under the diversity statute, 28 U.S.C.A. § 1332.

After service was had upon it Overnite filed its motion under Fed.Rules Civ. Proc. rule 14, 28 U.S.C.A. seeking to bring Universal Carloading and Distributing Company, Inc., in the action as a party defendant, with the right to serve a third party complaint upon it, and on such being allowed, filed its answer to the cause of action alleged in plaintiff's complaint and aptly filed its third party complaint against Universal. Universal thereupon filed its answer and sought the right allowed by the Rules to have process issue and to make the Chesapeake and Ohio Railway Company a party to this action. Order to such effect was signed. Summons issued and a purported service was had, but subsequently such service was dismissed and the summons quashed for that it did not appear that the Chesapeake and Ohio Railway Company was doing business in North Carolina within contemplation of the law permitting such service. The trial was thereafter had in line with such dismissal.

Plaintiff, a manufacturer of sports and wearing apparel for women has its place of business in Asheville, in the Western District of North Carolina, and at the time herein complained of had its entire output under contract of sale with Sears, Roebuck and Company, and was dealing directly with 268 stores in said organization. On June 23, 1955, it shipped an order to Sears, Roebuck and Company in Chicago, made up of four different styles of two-piece playsuits, in assorted colors and sizes, consisting of 2,068 such garments, packing such shipment in nine corrugated cartons each having a 350 pound bursting test capacity, and being of the approximate size of 30″ × 32″ × 24″. Each carton was sealed with a top and bottom overlap of three inches or more, and additionally tied with two or three one half inch steel traps, and sealed with steel clamps. On arrival in Chicago this shipment was refused for that it was a late delivery, and thereupon was re-shipped by the original consignee, Sears, Roebuck and Company to plaintiff at Biltmore, North Carolina. That none of the packages had been opened and the re-shipment to plaintiff was made in the same manner as received. The nine cartons were delivered to Universal Carloading and Distributing Company, Inc., a common carrier engaged in Interstate Commerce for shipment to plaintiff, in Biltmore, North Carolina. Universal is a freight forwarder within the meaning of Title 49 U.S.C.A. § 1002(5), and in line with its position the nine cartons were placed with the Chesapeake and Ohio Railway Company for transportation to their destination. That the merchandise herein was delivered to Overnite by the Chesapeake and Ohio Railway in Richmond, Virginia, and was transported to Biltmore by Overnite. Upon arrival of the shipment and at the time of its attempted delivery, it was determined that all of the cartons had been damaged and were water soaked,—that four of them at least had been broken open, and all had evidently been roughly handled and

were *sopping wet*. Some of the cartons were evidently bent out of shape. One of the cartons at least had garments protruding therefrom and some of the sports suits that could be seen appeared to be filthy.

Four of the cartons were actually removed from the truck of Overnite and had been placed on the platform of the plaintiff. The remaining five cartons were on the truck, evidently were not broken open, were not examined, other than from the outside, but were found to be wet and soaked and otherwise damaged. Plaintiff thereupon refused to accept any of the shipment, and all of it was thereupon removed by Overnite and conveyed by it in due time to Universal at its warehouse, in Richmond.

When the shipment was delivered to Overnite at Richmond it was determined that all of the cartons were in such bad shape that Overnite refused to accept the shipment for delivery to plaintiff, but that upon further request the shipment was accepted with the blanket exception indicating damage to all of the cartons and with the understanding that if the merchandise was refused at destination, that it could be returned immediately to Universal.

At three later times examinations were made by representatives of Universal and the Chesapeake and Ohio Railway while the property was stored in the warehouse in Richmond, and these investigations tended to show that though the cartons may have been damaged to some extent that the goods contained therein were in good condition and constituted first class merchandise.

Universal filed a counterclaim for $658.78, claimed by it for warehouse storage, having on August 10, 1955 notified plaintiff that it was holding the goods in question in Richmond as a warehouseman for plaintiff's benefit.

The question for decision in this case is a factual one and arises from the record of whether or not the shipment was totally destroyed and worthless. This is plaintiff's position. The defendant's position is that the goods were not worthless; that only a small quantity of them had been in any wise damaged and that the plaintiff did not have the right under the law to refuse the shipment.

Defendant, Universal, entered into the following stipulation agreeing thereby to absolve Overnite in the event of a recovery against it.

"It Is Hereby Stipulated and Agreed that if the plaintiff in the above-entitled action is successful in obtaining a recovery against the Overnite Transportation Company, Inc., Defendant and Third-party Plaintiff, that the Overnite Transportation Company, Inc., shall be entitled to a judgment over in the same amount together with the costs against the Universal Carloading and Distributing Company, Inc., Third-party Defendant, and that said judgment shall be the sole obligation of the Universal Carloading and Distributing Company, Inc.

"This 5th day of August, 1957.
 "(s) Uzzell & DuMont
 "By: Harry DuMont

"Attorneys for Overnight Transportation Company, Inc., Defendant and Third-party Plaintiff.
"(s) Horton & Hyldburg
"By: Carl A. Hyldburg, Jr.

"Attorneys for Universal Carloading and Distributing Company, Inc., Third-party Defendant"

Since this is a diversity case the rule in estimating such damage as plaintiff may have suffered is that rule as set out in the decisions of the North Carolina courts, however it would appear that the doctrine adopted here is the universally accepted one, and that—

"As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss, and sue for their value,

does not apply to contracts of affreightment. The fact, therefore that the goods were injured upon the journey through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury". 3 Hutchison on Carriers, sec. 1365.

In Wilkins v. Atlantic Coast Line R. Co., 160 N.C. 54, 58, 75 S.E. 1090, 1092, which was a case of total loss:

"In contracts of affreightment, the consignee under an ordinary bill of lading may not as a general rule reject the goods because the same have been wrongfully damaged in the course of shipment. Under usual conditions, he must receive the goods and hold the company for the injury done, and he is required further to do what good business prudence would dictate in the endeavor to minimize the loss. The principle, however, does not obtain when the 'entire value of the goods has been destroyed and the injury amounts practically to a total loss.' In such case the consignee is justified in refusing the goods, and may sue for the entire amount."

In Whittington v. Southern Railroad Co., 172 N.C. 501, 90 S.E. 505, 506, the Supreme Court through Mr. Justice Allen goes fully into the applicable law and reaffirms among other things the doctrine theretofore held by the court, and notes, however,

"That when the loss is partial the doctrine is that the owner cannot reject the goods and recover the *value,* and not that he cannot recover the damages actually sustained, and this distinction is found in all the authorities."

The court in its decision likewise approved the charge given by the trial judge that the measure of damage was "the difference between the value, reasonable market value of the shipment at the time it reached [its destination], in the condition it then was and what would have been a reasonably fair value of that same shipment at [its destination] at the same time but for the damage suffered by it or sustained to it, owing to the negligence of the defendant," and the court then goes on to say "this rule is not only supported by authority, but seems to be reasonable and just, and it imposes no additional burden on the carrier."

It would certainly seem that from the description of the nine cartons when each was being unloaded on to plaintiff's platform and their appearance, that plaintiff was warranted in assuming that the damage found in the four cartons which were fully examined would likewise prevail in the other five cartons not then removed from Overnite's truck, and that plaintiff would be justified in refusing the shipment as worthless, and if perchance, as appears in this case, it would subsequently develop that this assumption was not wholly borne out, that plaintiff, even though it had refused said shipment, would yet be entitled to recover its damage suffered and sustained under the rule as set out in the above cited case.

With that thought in mind I award to plaintiff the damage which I find from the evidence and by its greater weight, it has suffered and sustained, and set the amount of recovery at $2,350, with interest, against Overnite Transportation Company, Inc.

In consequence of the stipulation entered into between Universal and Overnite in which Universal agrees that any judgment obtained shall be its sole obligation, such amount awarded herein is to be and become an obligation of Universal Carloading and Distributing Company, Inc., third party defendant.

I further decree that Universal is not entitled to a recovery as against the plaintiff on its counterclaim for its alleged storage of said refused goods.

Counsel will submit decree.